## WRIGHT v. GRAHAM.

1. TAXES: *When defendant tax purchaser reimbursed, etc.*

  A defendant in equity for land who under a *bona fide* claim of right to the land has acquired a tax title to it, or has redeemed it from a forfeiture for taxes, is entitled, in the decree against him for the land, to be reimbursed the taxes he has paid, though he asserts no title by virtue of his tax purchase or redemption, but claims to have purchased only to protect his own title which proves defective.

Wright v. Graham.

2. ACKNOWLEDGMENT: *Of mortgage: What necessary.*

   The acknowledgment of a mortgage must show that the mortgage was executed for the " consideration" expressed in it, or it will be void as to all persons except the parties to it, though they have actual knowledge of its existence.

3. SAME: *Effect of curing act of 1883.*

   The act of 1883 to cure defective acknowledgments of deeds, etc., can not operate in this court in a case decided in the Circuit Court before its passage. The judgment of the Circuit Court must be tested by the law as it then existed.

APPEAL from *Lee* Circuit Court, in Chancery.

Hon. M. T. SANDERS, Judge.

*John C. Palmer* for appellant.

The doctrine of *Main v. Alexander* should be reconsidered by this court. The object of the law being to secure proof of the execution of the instrument, and the proof by subscribing witnesses going only to the execution of the instrument, the purposes of the law are entirely accomplished by giving effect to such an acknowledgment as appears to the mortgage.

*Thweatt & Quarles* also for appellant.

The acknowledgment was cured by act March 14, 1883. (*Acts 1883, p. 129.*) As to the expediency and constitutionality of such curing statutes see *16 Am. Dec., 516, 546, 387.* The deed in this case was not invalidated before the passage of the act, for both parties appealed, and the case is now pending.

*Tappan & Horner* for appellees.

Appellee was an infant, and not barred by limitation. *Gantt's Digest, secs. 4113, 4130; 30 Wis., 333.*

When an ancestor dies in possession of land, it is not necessary in ejectment to trace title any further. *Adams on Eject., 281; 21 Ark., 52; 31 Ib., 334.*

The acknowledgment to the mortgage was fatally defect-
ive, and the instrument not properly filed for record or a
lien on the land. *35 Ark., 67, 365; 37 Ib., 91.*

The appellant has not a vendor's lien. She was not the
vendor, nor had she Lanford's notes for the purchase
money. *27 Ark., 229; Wash. Real Prop., vol. 2, p. 92; 25
Ark., 129.*

Appellee entitled to rents, etc., during the whole time
she was tortiously kept out of possession, and not merely
from the time of the institution of the suit. *16 Ark., 181;
Gantt's Dig., sec. 2260; 2 Ind., 87; 15 Wall., 624; 10 Pa.
St., 198.*

The defective acknowledgment not cured by act March
8, 1883, because the deed had been "invalidated" by decree
before the passage of the act.

EAKIN, J. This is an action begun in ejectment by
Robert Graham and her husband, Davie W. Graham,
against the tenants of Mary J. Wright, to recover two con-
tiguous half sections of land. She claims as sole heir of her
father, Robert A. Lanford, alleging that he died seized of
the land, on the sixth of April, 1861, holding the same
under a deed from William D. Burnett and wife, which is
exhibited. It appears to be an absolute conveyance for
the consideration of $16,000, the receipt of which is
acknowledged. It was executed on the twenty-fourth day
of June, 1858, and duly acknowledged and recorded.
Proper allegations were made with regard to possession of
defendants, etc.

Mrs. Mary J. Wright (formerly Tarpley) was admitted
to defend.

She pleaded at law the statute of limitation of seven
years, also that of five years on judicial sales. She admit-
ted that the plaintiff's father, Lanford, was in possession

on the sixth of April, 1861, but denied his title, and also the title and right to possession of plaintiff, Robert.

By way of equitable defense and cross complaint, she says that on the first of March, 1858, she and her then husband, Tarpley, were seized as owners of the land, and conveyed it to W. D. Burnett by a deed, which is exhibited. It appears to have been for the expressed consideration of $38,200, secured to be paid by five notes for the sum of $6,000 each, due respectively on the first days of March 1859, 1860, 1861, 1862 and 1863, and a sixth note for $8,200, due March 1, 1864, all of which, the deed recites, was secured by a mortgage to which reference is made, as executed by Burnett and wife.

The deed also included a number of slaves, the value of which doubtless entered into the aggregate of the consideration. The deed, in referring to a mortgage, does not show upon what property the mortgage was given by the purchasers. She proceeds however to allege that next day Burnett and wife executed to her and her then husband a mortgage of this land and some negroes to secure the debt, and exhibits the instrument. It was filed on the tenth of June, 1858, and recorded with the following acknowledgment:

"State of Arkansas, *County of Phillips.*

"Be it known that I, William D. Burnett, and Nancy D. Burnett, his wife, personally well known to the undersigned justice of the peace, duly sworn and commissioned by the county aforesaid, who acknowledged they made and signed the foregoing deed of conveyance, for the purposes and uses therein contained and set forth; and they the same certified for record. And at the same time, I examined Nancy D. Burnett, wife of the aforesaid W. D. Burnett, separate and apart from her said husband, who says she signed the foregoing deed of her own free will,.

without fear, compulsion or undue influence of her husband, W. D. Burnett, and that she desired the same certified. 1 therefore certify, etc." Signed by the justice.

She further alleges that on the twenty-fourth day of June, 1858, Lanford desiring to purchase said land from Burnett, and being willing to pay for the same the sum of $16,000 on credit, but finding the mortgage on record, was unwilling to make the contract without some assurance or relinquishment from Tarpley. Whereupon it was agreed by all the parties—Burnett, Lanford and Tarpley and wife—that Burnett and wife might execute the deed, and that Lanford should execute to Tarpley and wife six notes, as follows: One for $1,000, due January 1, 1859; one for $1,600, due January 1, 1860; and four for $2,666.66⅔ each, due respectively on the first days of March 1861–62–63–64. Also Lanford was to pay two notes to W. C. Myrtle for $1,066.66⅔ each, and one to Watkins & Gallagher for $600. By request of Lanford, it is alleged, Tarpley indorsed this agreement on the margin of the mortgage, to take effect upon the payment of the said sums of money.

By reference to the transcript of the mortgage this indorsement appears, together with an absolute release of all the slaves in the mortgage, in favor of one Jesse Locke and wife. It is alleged that Lanford received the deed set forth in the complaint with this understanding, and subject to the lien for the purchase money, and that no portion of the notes above mentioned were ever paid; and it is submitted that the plaintiff, as heir of Lanford, is not entitled to possession until payment.

She proceeds to state that afterwards Tarpley died, and she became his administratrix. She returned to the State after the war, and finding the lands had been sold for taxes of 1860–1, redeemed them from the tax purchasers, taking an assignment of the certificate. Afterwards neither Lan-

ford nor Burnett paid the taxes for 1865 and 1866, where-upon the land was sold for those taxes, and again redeemed by defendant. In the last case the purchase at the tax sale was made by one Ayres, who obtained the collector's deed, and then conveyed to defendant. On inspection of these exhibits it appears that a quarter section of the land in controversy, the northwest quarter of section 20, in township 1 north, range 3 east, is omitted. This portion was bought in by herself on sale for the taxes of 1867. She also claims that she holds a certificate of redemption for the north half of 20, for the year 1870, for which she paid; and also receipts for taxes paid at various other times.

At the March term 1868, of the Phillips County Circuit Court, she filed a bill to foreclose the mortgage for the purchase money against Burnett and one Kinkle, who she alleges was in possession under the heirs and representatives of Lanford's widow, and the plaintiff and her sister (since deceased) were members of his family. She alleges that they all knowing that the land would not sell for the amount for which it was bound, abandoned it without ever paying the taxes. The mortgage was foreclosed for the sum of $20,607.55, and sold by the commissioner to one Mrs. Mary F. Farrell, for the sum of $7,800, who, on the fourth of November, 1869, conveyed to Joseph M. Anthony, for $8,500 upon a credit, retaining a lien for the purchase money.

Afterwards, at the October term, 1875, of the United States District Court for the Eastern District of Arkansas, the Farrells obtained a decree against the lands for an unpaid balance of purchase money. At the ensuing sale defendant became the purchaser, and obtained a deed of conveyance.

She prays that if it be found that plaintiff has any interest in the land, it may be subjected to a lien for the $16,000

purchase money, with interest from the twenty-fourth day of June, 1858.

The cause, without objection, was transferred to equity, and plaintiff and her husband answered the cross-complaint. She denied that Lanford made the agreement with Tarpley and Burnett, as set forth, or any other agreement with regard to the land, but says that Lanford purchased of Burnett and paid him the full consideration of $16,000. Also denied that Lanford had then any knowledge or information of the mortgage, or any other lien held by defendant or her husband, or that they did in fact have any. Also denied that any indorsement was made upon said mortgage by the consent or procurement of Lanford. Also denied that Kinkle was her agent, or that she was herself a party to any foreclosure suit. She says that she was born on the sixth day of December, 1861, and was an infant in 1868. She denies that there had ever been any valid sale for taxes of any part of the land. She says that defendant, Mrs. Wright, and those under whom she claims, took possession in March 1868, and have since received the rents and profits. She says her father died when she was quite young, and she has grown up in ignorance of her rights.

The Chancellor found in favor of the plaintiff upon the claim for the land, and ordered a writ of possession; and found also that she was entitled to recover rents and profits from the beginning of the suit. He found, however, that the defendant had paid some taxes and money for redemption, for reimbursement of which she was entitled to a lien, if the amount exceeded the rents and profits. An account was ordered to be taken as to these matters.

Both parties appealed.

First: As regards the appeal of the plaintiff. It is based on the refusal of the court to decree rents and profits

during the whole time of defendant's occupancy. These might doubtless be recovered in ejectment without regard to the period of limitations, when the plaintiff is a minor. In this case, however, the Chancellor may well be supposed to have gone upon the ground that there was no clear proof of the time when defendant took possession. It was admitted at the beginning of the suit. Before that, it does not clearly appear when defendant assumed control. It was abandoned by the mother and step-father of plaintiff in 1868 or 1869, but it is not plain that defendant took actual possession then, or at any fixed period.

The taxes and redemption moneys paid by Mrs. Wright, whatever they may be, and it is plain enough there were some, were paid under a *bona fide* claim of right to the land itself and inured to the benefit of the plaintiff. She has a tax deed, by mesne conveyances from the collector, to a great part of the land. She does not herself take the position that she had no interest in the land left to make it proper in her to acquire a tax title as any other stranger. From all that appears, such position, if conceded, would show a good adverse title and defeat the action of ejectment. She concedes on her part that she did not strengthen her own title, or mean to do so, but only meant to protect it, and simply claims reimbursement, in case the title be found in plaintiff. That is eminently just. There was no error against the plaintiff.

1. TAXES: When a defendant tax purchaser entitled to reimbursement.

The acknowledgment of the mortgage was defective in that it did not state that it was executed by the mortgagor for the consideration therein set forth. The grammatical inaccuracies amount to nothing. It is urged that this defect was cured by an act of 1883, passed for the purpose of curing defective acknowledgments. But this cause was decided before the passage of that act, and we can not consider it. The question on appeal is, did the Chancellor

2. ACKNOWLEDGMENT. Of mortgage. What necessary in.

3. Effect of curing act of 1883.

err? That must be determined by the law as it then existed, or we would overrule a decision which was correctly made.

As long as this court feels constrained to adhere to its ruling in the case of *Main v. Alexander*, *9 Ark.*, *112*, the registration of a mortgage defectively acknowledged conveys no notice, and the mortgage itself is absolutely void as against all the world save parties, even with actual notice. The deed of plaintiff's ancestor from Burnett is absolute, with no lien reserved. He entered and died in possession, without any act of his, shown by proof, to create a lien upon the land. The indorsement or memorandum on the margin of the record is not shown to have been made by his direction, knowledge or consent; and, if it had been shown, there is no proof that he ever executed the supposed notes, or, if he did, that they remain unpaid.

The *prima facie* case of the plaintiff was well made. There was no bar to statute of limitations either of seven or five years. The equitable defense, save as to taxes, was wholly unsustained by proof, even if we should hold that all the facts set up would have given him a lien by estoppel or otherwise—a matter we need not decide.

Affirm and remand for further proceedings.