## NOBLE vs WORTHY.

### Opinion delivered April 2, 1898.

*1. Evidence—Subsequent Conduct.*

> In an action of replevin for goods alleged to have been fraudulently purchased, it was error for the court to strike from the evidence a deed of assignment executed by the defendant, after the alleged fraudulent purchase, as the subsequent conduct of the defendant might supply a motive for the making of such alleged fraudulent representations.

*2. Grantor in Deed of Assignment is Bound by its Recitals.*

> The grantor in a deed of assignment, is bound by any recitals in the deed in so far as they are admissions against his interest.

*3. Testimony—Immaterial—Not Error unless Substantial Rights Affected.*

> A case will not be reversed for the admission of immaterial testimony which does not prejudice a party's substantial rights.

*4. Instruction—General and Special.*

> When the general charge completely states the law on all points it is not error to refuse special charges covering the same points of law as those contained in the general charge.

*5. Replevin—Verdict—Sufficiency.*

> Before the jury retired it was agreed by counsel on both sides that the value of the goods in controversy was $512.91. *Held,* That by this agreement it was conceded that the goods can not be returned, and a verdict for the value of the goods instead of being in the alternative for their return or for their value, is sufficient to sustain the judgment when the form of the verdict was not excepted to at the time.

*6. Replevin—Interplea—Waived by Plaintiff Filing Answer.*

> The assignee filed an interplea in this action instead of applying to be made a party defendant. Plaintiff filed an answer to the

interplea. *Held*, That the difference between interpleading and filing an application to be made party defendant, is a difference merely of form, and by filing an answer to the interplea, plaintiff waived the irregularity.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Action in replevin by Sam and Ed. Noble, partners as Noble Bros. against J. N. Worthy.

Lee Cruce, assignee, filed an interplea. Judgment for Interpleader. Plaintiff appeals. Affirmed.

January 10, 1894, the appellants, Sam and Ed. Noble, as partners under the firm name of Noble Bros. (hereinafter called plaintiffs,) filed in the United States Court, Third division (now Southern district) of the Indian Territory, their complaint in replevin against the appellee J. N. Worthy (hereinafter called the defendant,) to recover certain merchandise described in said complaint. At same time plaintiffs filed the statutory affidavit and bond, and caused an order of delivery to issue for said merchandise which was executed by the marshal for said court by his seizing merchandise described in the complaint of the appraised value of $512.91, and defendant having failed to execute forthcoming bond, the property was by the marshal delivered to plaintiffs. In their complaint, plaintiffs, in substance, alleged that they were the owners of the merchandise in the complaint described and other statutory requirements, and specifically alleged "that on or about the 1st day of December, 1894, they were engaged in the mercantile business in the town of Ardmore, in said district, aforesaid, and that said defendant, on or about said date, applied to plaintiffs for

credit, and, to obtain such credit, the said defendant willfully, tortiously, and feloniously misrepresented to plaintiffs the amount and value of his assets, and willfully and fraudulently misrepresented and misstated the amount of his liabilities, or debts, owing to his creditors, in this: That the said defendant falsely represented to plaintiffs that his entire indebtedness as a retail merchant, including the indebtedness he then owed plaintiffs, would not exceed $1,000 or $1,200; that said statement was verbally made to plaintiffs, and was made to induce them to extend to him credit for the merchandise hereinbefore described; that plaintiffs at the time said statement was made, and at the time said merchandise was sold and delivered to defendant, believed said statement was true, and relied upon same in. extending such credit, and had plaintiffs known such statements were untrue they would not have extended such credit.'' Further alleging ''that in March, 1893, defendant commenced the retail grocery business in the town of Ardmore, without capital of his own, and with but $700 of money borrowed from his wife, and that continuously since said time, up to the time said statement was made, and subsequent thereto, and during the entire time said merchandise was being sold and delivered to him, was insolvent and doing business on a fictitious capital; that defendant willfully, tortiously, and fraudulently concealed from these plaintiffs the fact of his insolvency, and the fact that he was doing business on a fictitious capital, as aforesaid, and falsely and fraudulently represented to these plaintiffs that he owned the capital with which his business was being operated, and that plaintiffs did not discover the insolvency of defendant until after said merchandise was sold and delivered to him at his instance, and for these reasons the plaintiffs allege the title thereto did dot pass from plaintiffs to the defendant, but that same is yet vested in plaintiffs.'' To this complaint defendant filed his answer, denying, in general terms, the allegations in the complaint. April

19, 1894, Lee Cruce filed his interplea in said cause, claiming the merchandise under a deed of assignment executed and delivered to him January 9, 1894. On April 14, 1896, said cause was tried before a jury, resulting in a verdict in favor of Lee Cruce, interpleader, for the sum of $512.91; whereupon the court caused judgment to be entered against plaintiffs, and their bondsmen on replevin bond, for said sum, interest, and costs. Plaintiffs filed motion for new trial, within the time required, which was presented to and overruled by the trial court. Plaintiffs' appeal was allowed, and they bring said cause to this court for review.

*C. L. Herbert, W. A. Ledbetter* and *S. T. Bledsoe*, attorneys for appellant

1. The deed of assignment was competent evidence to prove that defendant was indebted to his wife in the sum of $700 and was so indebted to her when he made statements to plaintiff as the basis of credit, and the action of the court in striking the deed from evidence when offered by the defendant, was not cured by its subsequent introduction by the interpleader. Southern Ins. Co. vs White, 58 Ark. 277; 1 Greenl. on Evidence § 189; 1 Rice on Evidence, p 476, § 245; 1 Jones on Law of Evidence, (Pony Series) § 237.

2. A party making a statement for the purpose of obtaining credit, is bound by his statements and cannot show when the falsity of his statement is discovered that he made an honest mistake. Gainsville National Bank vs Bamberger, 13 S. W. 959. If an insolvent purchaser of goods, fraudulently conceals his insolvency, the vendor upon discovery of such insolvency, may rescind the contract and recover the goods. Taylor vs Mississippi Mills, 47 Ark. 241; s. c. 1 S. W. 283; Gainesville National Bank vs Bamberger, 13 S. W. 959; Gavin vs Armistead, 57 Ark. 574, 22 S. W. 431; Talcott

vs Henderson, 31 Ohio St. 162; Hall & Brown, W. W. M. Co. vs Brown, 17 S. W. 715.

3.   The verdict was not responsive to the issues, in that it was for the value of the goods only, instead of being in the alternative for the return of the goods or their value. Jetton, et al, vs Smead, 29 Ark. 373; Rowark vs Lee, 14 Ark. 425.

*W. B. Johnson, A. C. Cruce and Lee Cruce,* for appellees.

1.   The court did not err in refusing to permit testimony on the issue between plaintiff and the interpleader as to the defendants insolvency, interpleader, the assignee in the deed in being shown to have no knowledge of any fraud. Sanger Bros. vs Flow, 48 Fed. 152; Bank of Little Rock vs Frank, 37 S. W. 400; 54 Ark. 14; 58 Ark. 556; 59 Ark. 503; Swofford Bros. Dry Goods Co. vs Smith-McCord Dry Goods Co., 1 Ind. Ter. 314; Hill vs Shrigley, 51 Ark. 56.   The fraud of the assignor is immaterial even if known by the assignee if the latter does not participate in the fraud.   Wood vs Keith, 30 S. W. 756; Marberry vs Brooks, 7 Wheat. 556; Emerson vs Center, 118 U. S. 1; Hempstead vs Johnson, 18 Ark. 140; Cornish vs Due, 18 Ark. 181; Brooks vs Marberry, 11 Wheat 78.

SPRINGER, C. J. (after stating the facts.)   At the trial of this case in the court below the plaintiffs submitted to the jury, as a part of the testimony relied on to sustain their cause, the deed of assignment from J. N. Worthy, the defendant, to Lee Cruce, the interpleader.   After the deed was read, the counsel for the defendant and interpleader moved the court to strike said deed from the record, which motion was allowed, to which ruling of the court the plaintiffs excepted.   After the plaintiffs' case was closed, Lee Cruce, the interpleader, introduced the same deed in evidence

as the basis of his title to the goods in controversy. After the court had stricken the deed from the record, when introduced by the plaintiffs, the plaintiffs moved to dismiss the interplea, as the interpleader's title to the property was derived through and vested solely upon the deed. This motion was overruled, and an exception was saved. We are of the opinion that the court erred in striking the deed from the record when it was offered in evidence by plaintiffs. It was competent for plaintiffs to show what motives prompted the defendant, Worthy, in making the deed of assignment, and Worthy was bound by the recitals in the deed, in so far as they were admissions by him against interest. The execution of the deed, it is true, was after the alleged false and fraudulent statements made by Worthy in order to procure credit in the purchase of the goods; yet any subsequent conduct of Worthy, which would supply a motive for making such alleged false statements, or anything which was done in consequence thereof, would be competent evidence. Steph. Dig. Ev. pp. 13, 14. However, we are further of the opinion that the admission of this deed in evidence. when it was offered by the interpleader to support his title, cured the error in its previous exclusion. When the deed was before the jury it established all its recitals, which could be regarded as admissions of Worthy, who executed it, against his interest.

The assignments of error, from the third to the eighth, inclusive, relate to the introduction of certain testimony at the instance of the interpleader, and to the manner of conducting the examination of certain witnesses called to impeach the credibility of one of plaintiffs' witnesses. There was much of error and informality disclosed in the objections and pointed out in the assignments of error. But we do not see how the rights of the plaintiffs were prejudiced in any manner. The evidence which was really material reached the jury, and matters which were immaterial do not

*Margin notes:*
Evidence—
Deed of assignment.

Grantor bound by recitals.

Subsequent conduct.

Immaterial testimony not prejudicial.

seem to have prejudiced plaintiffs' substantial rights. If the learned counsel for plaintiffs called the attention of the jury, in language half so forcible and eloquent as that used in their brief, to the injustice done their principal witness by the effort to impeach his credibility, the assault upon him must have reacted upon his accusers, and greatly strengthened his credibility in the minds of the jury.

The ninth and tenth assignments of error are as follows: "The court erred in charging the jury as follows: 'Gentlemen of the jury: The plaintiffs in this case, Noble Bros., instituted a replevin suit against Mr. Worthy, the defendant, in that suit to recover a certain lot of goods, wares, and merchandise which they allege was in the possession of Mr. Worthy, and which Mr. Worthy contracted to buy from Noble Bros.; the plaintiffs alleging that he never acquired title to the merchandise in controversy, and, as a reason why he never acquired the title, they assert—First, that the goods were not paid for by Mr. Worthy; and, secondly, he obtained a credit on false and fraudulent statements and misrepresentations as to his solvency and condition to meet his bills.'" "The court erred in the following portion of his charge to the jury: "Now, if you believe from the testimony—if you should conclude from the testimony—that the defendant in the original suit, Worthy, acquired possession of these goods, contracted to pay for them, and did not pay for them, and that he secured his purchase—the purchase of these goods, wares, and merchandise—by means of false and fraudulent statements and representations as to his solvency and ability to pay for the same, then it would be your duty to find for plaintiffs. If, on the contrary, you come to the conclusion that this trade was made bona fide between Noble Bros. and Mr. Worthy; that he bought the goods in good faith, and didn't resort to any fraudulent device and misrepresentations whether they were paid for or not,—he would be entitled to recover. If he bought any portion of

them, and paid for them, he would be entitled, in any event, to recover such portion as they failed to show by their proof to have been paid for, and such portion as may have been bought before the fraudulent misrepresentations were made.'" Counsel for plaintiffs call attention in their brief to that portion only of the trial court's charge to the jury which is set forth above. Immediately following the charge thus given were the following instructions to the jury and proceedings of the court: "If you should conclude from the evidence that Worthy was not guilty of the act of fraud and misrepresentation in the matter of his solvency and condition to meet his bills, and that the transactions between him and the plaintiff in relation to these goods were in good faith, it would be your duty to find for the interpleader." Attorney for the Defendant: "We think the charge is correct, but ought to have contained the charge that the party must have relied upon the alleged false misrepresentations." By the Court: "Yes, sir; the plaintiffs must have relied upon the misrepresentations made by Worthy at the time of the transaction. If false misrepresentations were made at all, the trade must have been induced by these false misrepresentations before they will be entitled to recover in any event. If they did make the trade, and did rely upon the misrepresentations, and the defendant acquired possession of the goods under such circumstances, it would be your duty to find for the plaintiffs." Counsel for plaintiffs submitted numerous objections to the charge of the court, only a portion of which charge is given above, and also seven special instructions which they requested the court to give, but six of which were refused. Counsel for plaintiffs do not in their brief insist upon the special instructions submitted by them to the court's charge, but they do insist that the court erred in refusing the instructions which were requested. The first instruction (No. 1) which was requested by plaintiffs is as follows: "That if the jury find from the evidence that the de-

(32)

fendant, Worthy, procured the goods, wares, and merchandise for which this suit was brought from the plaintiffs by means of false and fraudulent representations as to his solvency and ability to pay for the same, they will find for the plaintiffs." The record shows that the court did give this instruction to the jury, although counsel in their brief state that it was requested and refused. This instruction fairly submitted to the jury the issue to be tried, viz. whether the defendant procured the goods in controversy "by means of false and fraudulent representations as to his solvency and ability to pay for the same." If the jury should so find from the evidence, they were instructed to find the issues for the plaintiffs. If the jury should find, as the further instructions provided, that the defendant "was not guilty of the act of fraud and misrepresentation in the matter of his solvency and condition to meet his bills, and that the transactions between him and the plaintiffs in relation to these goods were in good faith," they were instructed to find for the interpleader. The court further charged the jury that, if false and fraudulent representations were made by the defendant, it must appear that the plaintiffs relied upon such statements as true when they extended the credit and sold the goods to the defeddant.

The instructions which plaintiffs requested, and which were refused, enumerated certain facts which were controverted, such as the following: If the defendant fraudulently omitted from the statement of his liabilities certain debts in favor of his wife and son-in-law; if the plaintiffs applied to the defendant for a statement of his financial condition as a basis for future credit, and defendant made a false statement of his financial condition in order to procure credit if plaintiffs applied to defendant for a statement of his financial condition, it was the duty of the defendant to render true and correct statement of his condition, and if defendant fraudulently omitted a material part of his indebtedness i

such statement; if the defendant was insolvent at the time he made any statement of his financial condition as a basis of credit, it was the duty of the defendant to disclose such insolvency, and, failing to do so, such failure would be a fraud on the plaintiffs; and if the defendant was insolvent when credit was extended to him, and fraudulently concealed from plaintiffs the fact of his insolvency, in order to obtain such credit. The proposed instructions, in the event the jury should find any of these facts from the evidence, required the jury to return a verdict for the plaintiffs. Another instruction requested and refused was to the effect "that the court should instruct the jury that 'insolvency,' within the meaning as given in the charge, means the condition of a man who is unable to pay his current demands as they mature." In refusing this instruction, the judge remarked; "I am not inclined to go into the details of this matter." These proposed instructions raise the question as to whether it is error for the trial court to refuse instructions, based upon specific facts in issue, if the court's charge has, in a general manner, clearly and fairly submitted to the jury the question to be determined. The court's general charge submitted to the jury the question whether the defendant procured the goods in question by means of false and fraudulent representations as to his solvency and ability to pay for same. It is not error for the judge to refuse requests for instructions upon propositions which have elsewhere been sufficiently covered, either in his general charge or in other special instructions given; and it is a principle upon which appellate courts uniformly act that the judgment will not be reversed for the refusal of instructions, if the court can see that the case was placed fully, fairly, and properly before the jury by the instructions which were given, although the requests refused may have been correctly drawn in point of law and in their application to the evidence. Thomp. Trials, § 2352, and numerous authorities cited in the note thereto. But the

trial court, except in the matter above stated, is bound to give instructions properly drawn, correct in point of law, and applicable to the evidence in all cases, when requested by one of the parties to the suit.    Thomp. Trials, § 2347. The special instructions requested by the plaintiffs, and which were refused, should have been given by the court in this case if each of such special instructions had been wholly correct in point of law.    Railroad Co. vs Latham, 63 Me. 177; Snow vs Ice Co., 77 Me. 55.    For instance, in the second instruction requested, the mere fact that the defendant may have omitted to state among his liabilities a debt due to his wife and son-in-law may not of itself have affected his solvency; but the jury were instructed that, if  they found such omission to have been made, they should find for the plaintiffs.

We are of the opinion that the general charge of the court is all that is required, and that its refusal to give the special instructions requested is not reversible error.    The general charge was broader than all the specific instruction combined.    The jury were instructed, if the defendant pro cured the goods by false and fraudulent representations a to his solvency and ability to pay for the same, and i plaintiffs relied on such representations, and thus extende the credit, the plaintiffs were entitled to a verdict in thei favor.    No intelligent jury could be misled by the genera instructions which were given by the trial court.    Nor wa it error in the trial court to refuse to submit to the jury th definition of the word "insolvent," which plaintiffs request ed.    Webster's Dictionary gives the following definitions the word:    "(1) Not having money, goods, or estate suffic ent to pay all debts; as an insolvent debtor.    (2) Not suffic ent to pay all debts of the owner; as an insolvent estate. This definition differs materially from that which plaintif requested the court to give.    Insolvency does not mean i ability to pay "current demands as they mature," but

*Margin notes:* Instruction.

Insolvency.
What is?

means not having money, goods, or estate sufficient to pay all debts. To have given the instruction requested would have been reversible error; for the jury would have been told, in effect, that, if the defendant did not have on hand money enough to meet his current demands, he would be insolvent, and that the verdict should, under the evidence and other instructions given, be for the plaintiffs. There are very few merchants or bankers who have on hand money enough to meet current demands. But, if they have in money, goods, and estate property sufficient to pay all debts, they would be solvent. A merchant who makes a statement that he is solvent, in order to procure credit would be telling the truth if he owned the money, goods, and estate sufficient to pay all his debts. He would not be guilty of making a false and fraudulent statement of his financial condition by claiming to be solvent if he could not meet his current demands as they mature, if it should appear that his "money, goods, and estate" were sufficient to pay all of his debts.

The instructions given by the court as to goods purchased before the alleged misrepresentations were made is sufficiently definite to authorize the court to refuse the giving of the third special instruction asked. The fourth and the fifth special instructions requested are substantially covered by the general charge of the court which was given. The sixth special instruction is defective in this: that it is not sufficiently definite as to the fact which would constitute fraud upon the plaintiffs. It should have alleged that if the jury found from the evidence that the defendant was insolvent at the time he made the statement as to his financial condition, and that the statement that he did make as to his financial condition showed him to be solvent, and that such statement was fraudulently made in order to secure credit thereby, and that the plaintiffs relied upon the truth of such statement and extended the

credit, believing such statement to be true, the jury should find for the plaintiffs.    The seventh instruction is defective in this: that it does not state that the plaintiffs relied upon the truth of the statement as made, and, relying upon the truth of the statement made, such credit was extended.    It may be that the special instructions requested presented the law in a more pointed manner than those which the court gave, but it is sufficient that the jury were properly instructed in substance.    Thomp. Trials, § 2352. When several forms of expression are equally accurate, it is in the discretion of the of the trial court to choose that form which he deems best adapted to make the rule of law intelligible to common minds.    Com. vs Costley, 118 Mass. 1, 25, citing Kelly vs Jackson, 6 Pet. 622.    Courts will presume jurors to be men of average intelligence, and capable of understanding and bearing in mind a proposition of law once fully and clearly stated, without its repetition in subsequent instructions.    Insurance Co. vs Buchanan, 100 Ind. 63, 74; Goodwin vs State, 96 Ind. 550; Browning vs Hight, 78 Ind. 257; McDonel vs State, 90 Ind. 320, 327.

Several of the assignments of error relate to the form of the verdict.    This was an action of replevin.    Attention is called to the following sections of Mansfield's Digest of the Laws of Arkansas, in force in the Indian Territory: Section 5145:    "In actions for the recovery of specific personal property, the jury must assess the value of the property, as also the damages for the taking or detention, whenever, by their verdict, there will be a judgment for the recovery or return of the property."    Section 5181 of same statute reads: . "In an action to recover the possession of personal property, judgment for the plaintiff may be for the delivery of the property, or for the value thereof, in case a delivery cannot be had, and damages for the detention.    Where the property has been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the

defendant may be for the return of the property, or its value, in case a return can not be had, and damages for the taking and withholding of the property." By section 5145 the jury are required to assess the value of the property, and the damages for its detention, whenever there may be a a judgment for the return of the property; and by section 5181 the judgment may be in the alternative, either for the return of the property, or for the value thereof, in case a return can not be had. The verdict of the jury was in the following form: "We, the jury, find for the interpleader, Lee Cruce, assignee, against Noble Brothers, plaintiffs, for the sum of $512.90, being the value of the goods taken by the plaintiffs, and that the writ of replevin was wrongfully sued out as to such goods." By reference to the record in the case, it will be seen that it was agreed by counsel on both sides, before the jury retired, that the value of the merchandise in controversy was $512.91, and that the jury might estimate the value of the goods at that amount. By this agreement it was conceded that the goods could not be returned. In fact, the judgment of the court recites "that the property replevined in this action has been disposed of by plaintiffs, and cannot be returned, to the interpleader." No exception was taken at the time to the form of the verdict; and, in view of the agreement of counsel and the recital in the judgment, it was not necessary for the jury to return a verdict in the alternative, for the return of the property or for its value. If the jury found the issues for the defendant, its only other duty was to assess the value of the property at the amount agreed upon by counsel. No damages were assessed for the detention of the goods, for the reason that a recovery of their value at the time the goods were taken, when the value may be recovered, is the measure of the damages in the case.

The twenty-first assignment of error in this case is as follows: "The trial court has no jurisdiction of the inter-

plea of Lee Cruce, the interpleader, for the reason that in a replevin suit a third party, as claimant of the subject-matter, cannot assert his right to such property by interplea." Plaintiffs did not demur to the interplea on this ground, but filed an answer to it, and went to trial on the merits of the case. Section 4946, Mansf. Dig. is as follows: "Where, in an action for the recovery of real or personal property, any person having an interest in the property, applies to be made a party, the court can order it to be done." If an objection had been raised, at the proper time, as to the form of Lee Cruce's intervention, under this section the court could have made him a party defendant, and could have treated his interplea as his separate answer in the case. No objection having been made as to the form of his intervention before the case was submitted to the jury, it is now too late to make such objection, unless it should appear that the court had no jurisdiction of the subject-matter of the interplea, or that it did not state facts sufficient to constitute a ground of recovery. It is an objection merely as to form, and not as to substance. After a careful examination of the record in this case, we are of the opinion that it discloses no reversible error. The judgment of the trial court is therefore affirmed.

CLAYTON, THOMAS and TOWNSEND, JJ., concur.