## HOBBS v. YOUNG.

No. 1224.    Opinion Filed November 18, 1911.

(120 Pac. 946.)

CHATTEL MORTGAGES — Failure to Record — Rights of Purchaser. Under sec. 4743 of Mansf. Dig. of the Statutes of Arkansas, in force in the Indian Territory prior to the admission of Oklahoma into the Union, a person who bought personal property upon which there was an unfiled purchase-money mortgage, and, as consideration for the property, credited the purchase price upon an existing note owing to him from the mortgagor, took the property free from the lien of the mortgage.

(Syllabus by Rosser, C.)

*Error from District Court, Carter County; Stillwell H. Russell, Judge.*

Action by J. George Hobbs against J. F. Young. Judgment for defendant, and plaintiff brings error. Affirmed.

*Guy H. Sigler,* for plaintiff in error.

*H. C. Potterf* and *E. A. Walker,* for defendant in error.

Opinion by ROSSER, C. This is a suit by the plaintiff in error, J. George Hobbs, hereinafter called plaintiff, against the defendant in error, J. F. Young, hereinafter called defendant, to recover damages for the conversion of two horses and two mules described in the complaint. There was a verdict and judgment for defendant, and the plaintiff brings error.

It appears from the record that the plaintiff owned the two horses described in the complaint, and about the 21st of December, 1906, he sold them to one A. P. Powell for $200, and took a mortgage on the horses, and also on the mules described in the complaint, to secure the payment of the purchase price of the horses. This mortgage was filed in the office of the clerk and *ex officio* recorder of recording district 21, of the Indian Territory, on the 28th of December, 1906, at 8 o'clock a. m. Some time about the 24th of December, the defendant, J. F. Young,

bought the two horses and one of the mules from A. P. Powell, without actual notice of the existence of the mortgage, before it had been filed in the recorder's office, and, as a consideration for the purchase price, he gave Powell credit for $110 on a note which Powell owed him at that time. The record does not disclose the date of the note, its exact amount, or when it was due. He also paid the keeper of the wagon yard, where the horses had been kept a day or two before he obtained possession of them, a feed bill of $1.40, which the wagon yard keeper claimed at that time. Paramount title to the mules was shown to be in a third person, not a party to the record.

The trial court instructed the jury that if Young bought the horses with knowledge that the plaintiff held a mortgage on them the plaintiff should recover, but that if the defendant bought the property before the mortgage was put on record, and without notice of the existence of the mortgage to the plaintiff, then the verdict should be for the defendant. To the giving of this instruction the plaintiff at the time excepted. The plaintiff requested the court to instruct that, it being admitted that the defendant received the horses and paid nothing for them, further than crediting the price upon the prior existing indebtedness from Powell to himself, he was therefore not a *bona fide* purchaser, and was liable to plaintiff for the value of the horses, and the only question for the consideration of the jury was what they were worth at the time the defendant converted them to his own use. He also requested the court to instruct that, before the defendant could claim he was a *bona fide* purchaser of the property, it must be shown that he parted with something of value, and that, if the jury believed the purchase price for the horses was the extinguishing or partial extinguishing of a past-due obligation from A. P. Powell to the defendant, then the defendant was not a *bona fide* purchaser, and not protected by the chattel mortgage statute. The court refused to give either of these instructions, and the plaintiff excepted.

There are three errors assigned, and the proposition presented in all of them is whether the defendant, not having paid

any new consideration at the time of the purchase of the horses from Powell, can hold them against the plaintiff's mortgage; in other words, whether the defendant, not having paid any consideration, except to credit the amount of the purchase price upon Powell's note to him, acquired thereby such title or interest in the property as enabled him to hold it against the purchase-money mortgage. A considerable portion of the briefs of both parties is taken up with the discussion of the question of whether or not the defendant, having merely credited a note, which he held against the plaintiff, with the purchase price of the animals in controversy, is a purchaser for value. If that were a material question in the case, it would be necessary to enter into a consideration of the question, and to weigh the authorities cited by both parties.

If it were a question of weighing equities in this case, it would be an easy matter to determine; but it appears to be merely a matter of construing the Arkansas statute in force in the Indian Territory. If, under that statute, the plaintiff had any claim or title that he could prove against a stranger, then, undoubtedly, his equity is superior to the defendant's. If he had title enough to make a *prima facie* case as against the defendant, then the defendant has not paid such value as in equity would enable him to overturn the purchase-money mortgage which the plaintiff held; but if the plaintiff is not in a position to prove his mortgage at all, as against any person but the mortgagor—that is, if it is void as against a stranger—then he must fail in this action.

The transaction out of which this controversy arose took place before statehood, on the Indian Territory side of the state, and the suit was brought in the United States Court for the Southern District of the Indian Territory, before Oklahoma was admitted into the Union. Therefore the rights of the parties are governed by the law in force in the Indian Territory prior to statehood. Section 1, Schedule to the Constitution of Oklahoma; *Blanchard & Co. v. Ezell,* 25 Okla. 434, 106 Pac. 960; *Armstrong, Byrd & Co. v. Phillips,* 28 Okla. 808, 115 Pac. 870; *Hoshaw v. Lines, infra,* 118 Pac. 583. The Arkansas statute

which was put in force in the Indian Territory, and which governs the rights of the parties, is as follows:

"Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office, and not before; which filing shall be notice to all persons of the existence of such mortgage." (Mansf. Dig. of Stats. Ark., sec. 4743.)

This statute having been extended over the Indian Territory, after it had been construed by the Supreme Court of Arkansas, should be given the construction that had been placed upon it by the Arkansas Supreme Court. *Sanger v. Flow,* 48 Fed. 152, 1 C. C. A. 56; *Stutsman v. Wallace,* 142 U. S. 295, 12 Sup. Ct. 227, 35 L. Ed. 1018; *National Live Stock Commission Co. v. Taliaferro,* 20 Okla. 177, 93 Pac. 983; *Choctaw, O. & G. R. Co. v. Burgess,* 21 Okla. 653, 97 Pac. 271; *Moore v. Adams,* 26 Okla. 48, 108 Pac. 392; *Huston v. Cobleigh,* 29 Okla. 793, 119 Pac. 416, and cases there cited. Under the Arkansas decisions which had been rendered prior to the time that this statute was extended over the Indian Territory by act of Congress, it seems that the plaintiff's mortgage was void as against a stranger, at least unless the stranger stole the property, or was a trespasser in taking possession. Under this statute, it has been decided in Arkansas, through a long line of decisions beginning with *Main v. Alexander,* 9 Ark. 112, 47 Am. Dec. 732, that a mortgage is good between the parties without acknowledgment and without being recorded, but that it constitutes no lien upon the mortgaged property, as against strangers, unless it is acknowledged and recorded as required by the statute, even though the stranger may have actual notice of its existence. In the case of *Main v. Alexander, supra,* Alexander took a mortgage on certain property belonging to Griffith, but it was not properly acknowledged. After the mortgage was taken, and after it had been recorded, Main brought an action against the mortgagor, Griffith, for money due him, and attached the property described in the mortgage.

The court held that Main's right was superior to that of Alexander's. In the course of the opinion, Johnson, J., said:

"The appellants insist that, as their attachments were levied upon the mortgaged property before the mortgage was acknowledged and recorded, as required by the act, their rights thus acquired take precedence of and override those of the mortgagee. This brings us to the main point in the case, and upon its decision the whole of it must turn. The question is whether the levy of the attachment merely changes the custody of the property from the hands of the mortgagor and places it within the keeping of the law, for the purpose of confining it within the jurisdiction of the court and to abide the event of the attachment suit, though subject to the paramount rights of the mortgagee; or whether the act of levying the attachment before foreclosure and sale did not, *ipso facto,* utterly oust the mortgagee of the rights that he had acquired under the mortgage. We think it clear that the latter proposition is true. The attachments found the rights of the mortgagee in an inchoate and imperfect state, subject to be divested either by a subsequent purchaser or a judgment creditor, and transferred it into the custody of the law, with all its imperfections upon it, to await the final judgment of the law. The instant it passed into the custody of the law it went out of the reach of all persons having mere inchoate rights, and those rights, if not utterly destroyed, must at least remain in abeyance until the property shall be legally released from the grasp of the attachment. The law regards a mortgage, which has not been acknowledged and filed for record, as a fraud upon the rights of strangers, and consequently will not countenance or uphold it in opposition to such rights."

This opinion has been followed in *Hannah v. Carrington,* 18 Ark. 85; *Jacoway v. Gault,* 20 Ark. 190, 73 Am. Dec. 494; *Carnall v. Duval,* 22 Ark. 136; *Haskill v. Sevier,* 25 Ark. 152; *Jarrett v. McDaniel,* 32 Ark. 602; *Fry v. Martin,* 33 Ark. 203; *Ford v. Burks,* 37 Ark. 91; *Dodd v. Parker,* 40 Ark. 536; *Watson v. Thompson Lumber Co.,* 49 Ark. 83, 4 S. W. 62; *Cross v. Fombey,* 54 Ark. 179, 15 S. W. 461.

In *Carnall v. Duval,* 22 Ark. 136, it was held that the fact that a subsequent purchaser had actual notice would not prevent him from obtaining good title by his purchase, and that in that case, where the clerk and recorder before whom the acknowledg-

ment was taken bought the property at an execution sale, he obtained good title to the property; the sale having been made before the mortgage was filed. The holding in *Dodd v. Parker,* 40 Ark. 536, with reference to actual notice, is to the same effect.

In other states having similar statutes the holdings have been the same. Jones on Chattel Mortgages (5th Ed.) sec. 314; *Garland v. Plummer,* 72 Me. 397; *Travis v. Bishop,* 13 Metc. (Mass.) 304; *Rawlings v. Bean,* 80 Mo. 614; *Parroski v. Goldberg,* 80 Wis. 339, 50 N. W. 191; *Hodgson v. Butts,* 7 U. S. 140, 2 L. Ed. 391, opinion by Marshall, construing the Virginia statute.

Under the Massachusetts statute, providing that an unrecorded mortgage "shall not be valid against any person other than the parties thereto," it was held, in *Bingham v. Jordan,* 83 Mass. 373, that an assignee for the benefit of the creditors of the mortgagor would hold the property as against the holder of an unrecorded mortgage.

The case of *Martin v. O'Bannon,* 35 Ark. 62, was a contest between the holder of vendor's lien notes and the holder of a chattel mortgage upon certain lots of land. The mortgage was filed for registration on the day it was acknowledged, and was afterwards recorded. The certificate of acknowledgment stated that the mortgagor acknowledged "that he signed, sealed and executed the foregoing instrument of writing for the uses and purposes therein specified." It was held that the word "uses" in the certificate was not of similar import or substantially the same as the word "consideration," required by the statute to be used in acknowledgments; and that therefore the certificate was invalid, and the mortgage was not legally recorded, and was not a lien upon the lots, except between the mortgagor and the mortgagees. The vendor's lien notes had been transferred by the former owner of the property to the plaintiff. The holder of the improperly acknowledged mortgage denied that the holder of the vendor's lien notes took them for a valuable consideration. The court held that this was not a sufficient answer, and, speaking by Mr. Justice English, said:

"But Day, Kealhofer & Co., having no lien upon the lots, except as against Hare, his heirs and administrators, under their unrecorded mortgage, were in no attitude to impeach the consideration for the transfer of the notes by Hare to appellee. As *to appellee, their mortgage was as if never made,* nor had they any lien or claim upon the notes in suit, and whether appellee paid Hare little or much for them was of no consequence to them or Martin. This court has repeatedly declined to depart from the decision in *Main v. Alexander,* 9 Ark. 112, which was founded upon the strong and peculiar language of the mortgage statute, and became a rule of property, that an unrecorded mortgage is not a *lien, as against strangers,* though they have actual knowledge of its existence. If a man makes a mortgage to another, and before its registration makes a second mortgage, or sells the premises to a third person, who has actual notice of the first mortgage, this, in the general law of conveyancing, is a fraud upon the first mortgagee, and makes a strong case for relief; but none is afforded under our statute, as construed in the above case, regulating the registration of mortgages. The party holding the unrecorded mortgage, and therefore having no lien upon the premises, *is in no attitude to question* subsequent sales or incumbrances, or the consideration for the transfer of the notes executed upon such sales. To open the door to him for such purposes would be a departure from the absolute rule, and lead to other departures, and finally, perhaps, to the mischief of unsettling rule of property. Persons taking mortgages must protect themselves by care in their execution and acknowledgment and diligence in filing them for registration. The trusting to unskillful persons in conveyancing has been an evil, and occasioned much loss."

This language is unequivocal, and can mean nothing, except that the holder of an unrecorded mortgage is not in a position to question the consideration paid by the person who obtained the property from the mortgagor. This has always been a rule of property in Arkansas, and also in the Indian Territory, after the statute was extended there by act of Congress.

The mortgage of plaintiff not having been filed prior to the purchase by the defendant, it was, as to the defendant, void, and the plaintiff cannot question the consideration which the defendant paid. The instructions of the court were more favorable

than the plaintiff was entitled to. · The judgment of the lower court should therefore be affirmed.

By the Court: It is so ordered.

All the Justices concur.