# FIRST STATE BANK OF ARDMORE v. KING & McCANTS et al.

No. 2780. Opinion Filed May 20, 1913.

Rehearing Denied June 30, 1913.

(133 Pac. 30.)

1. CHATTEL MORTGAGES—Rights of Subsequent Incumbrancers—Priorities. A. took a mortgage on certain chattels in 1908, upon which there was at the time a prior, valid, properly registered mortgage in favor of K. & M. At the time the controversy arose between these parties over the property, the lien of K. & M. had expired as to "subsequent purchasers or incumbrancers of the property in good faith for value," because of a failure to file a renewal affidavit. Held, that A., having taken his mortgage with notice of the lien of K. & M., never became, as

to K. & M., a "subsequent incumbrancer of the property in good faith for value."

2. SAME—Replevin—Parties Where the holder of a second mortgage takes chattels from a mortgagor by a writ of replevin, the holder of a prior and superior mortgage has the right to be made a party to the replevin suit by the court, under section 5574, Comp. Laws 1909; and the fact that such party styles his pleading an intervention, and is called an intervener, is immaterial.

(Syllabus by Brewer, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by the First State Bank of Ardmore against King & McCants and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. D. Potter,* for plaintiff in error.
*Cruce, Cruce & Bleakmore,* for defendants in error.

Opinion by BREWER, C. The particular questions in this case are as to which of two mortgagees has the superior right to certain mortgaged chattels, and whether or not, in a replevin suit by one of the mortgagees for the mortgaged chattels, the other mortgagee can, with leave of court, intervene and have his rights determined.

On December 6, 1906, one T. J. Jordan gave to defendants in error King & McCants, who will hereafter be called interveners, a mortgage on certain live stock situated in the Southern district of Indian Territory, in what is now Carter county, Okla. This mortgage was indorsed on the back, "This instrument is to be filed, but not recorded," and was on said December 6, 1906, filed in the office of the clerk of the United States Court in compliance with the law of Arkansas on the subject, then in force in Indian Territory. On November 29, 1907, King & McCants filed the statutory renewal affidavit required by the law of Arkansas, which had the effect of continuing the lien of the mortgage and notice thereof, as against all persons, for one year. On January 4, 1908, the First State Bank of Ardmore, plaintiff in error herein, who

will hereafter be called plaintiff, obtained a mortgage from Jordan on the same property, which was duly filed under the laws of the state of Oklahoma in Carter county. On December 31, 1908, the said First State Bank brought a suit, as plaintiff, in the district court of Carter county in replevin, and obtained possession of the live stock covered by both mortgages, in addition to considerable property not covered by the mortgage of the interveners. After receiving possession of the property, the plaintiff bank proceeded to sell the same under the terms and power of sale contained in its mortgage. While this suit was pending, King & McCants filed, with leave of court first obtained, their petition in intervention, setting up their prior mortgage, together with the renewal affidavit, and alleging a superior lien as to certain of the property involved in the suit. At a trial in the district court, without a jury by agreement of the parties, the court found the issues in favor of the interveners, and that as to a certain horse and some cattle that the lien of their mortgage was prior and superior to that of plaintiff; that defendant Jordan owed interveners $190 balance on their mortgage, and that plaintiff had sold the property covered by interveners' mortgage and had the proceeds thereof in a like sum in its possession; and that therefore interveners were entitled to judgment against the plaintiff for the said amount of money. Judgment being entered accordingly, the plaintiff brings this writ of error and relies here upon the two propositions mentioned at the beginning of this statement.

(1) The principal question is: Did plaintiff's mortgage, taken at a time when interveners' mortgage was a valid subsisting lien on the same property, and confessedly prior and superior to plaintiff's later become superior to the first mortgage, because when suit was brought the year of extension under the renewal affidavit had expired without the filing of a second renewal affidavit by interveners?

Had this entire transaction occurred—that is, had both mortgages been executed and suit brought under the Arkansas law, thus fixing entirely the rights of both parties under that

law—the question would be answered in the affirmative on the authority of *McKennon v. May,* 39 Ark. 442, and *Crawford v. Trigg* (Ark.) 15 S. W. 185, and *National L. S. Com. Co. v. Taliaferro,* 20 Okla. 177, 93 Pac. 983, following those cases. The Supreme Court of Arkansas had consistently held contrary to principle and the weight of authority, as admitted by that court in *Crawford v. Trigg, supra,* that a second mortgage, taken while the first was a valid lien and notice to all the world by virtue of being filed, became superior to the first, if at the time of suit the first mortgage had then been on file more than one year without a renewal affidavit. This holding was a logical sequence of the rule announced by that court that as to subsequent purchasers or incumbrancers in good faith actual notice of a prior mortgage was no notice at all; that the only notice that would bind or affect a subsequent purchaser or mortgagee was the notice arising out of a compliance with the statute. *Main v. Alexander,* 9 Ark. 112, 47 Am. Dec. 732; *Watkins v. Wassel,* 15 Ark. 73; *Hannah v. Carrington,* 18 Ark. 85; *Wright v. Graham,* 42 Ark. 140; *Hobbs v. Young,* 30 Okla. 271, 120 Pac. 946. In other words, that a man might see his neighbor take a mortgage and pay the consideration, and then take a second mortgage, and if he could get it filed before his neighbor's he would be a subsequent incumbrancer in good faith. This ruling, as has been suggested, led to the one in point here, and is contrary to the great weight of authority.

In this case, however, whatever rights the second mortgagee has flow from the law prevailing at the time he took his mortgage; it is an Oklahoma contract, into which the law in force at the time entered. That law, as construed by the courts, said to him when he took his mortgage that a subsequent purchaser or incumbrancer was not such in good faith under the statute (section 4422, Comp. Laws 1909), if he took with notice of the prior incumbrance. *Campbell et al. v. Richardson et al.,* 6 Okla. 375, 51 Pac. 659; *Strahorn-Hutton-E. C. Co. v. Florer & Bannerman,* 7 Okla. 499, 54 Pac. 710. Our

statute on this subject comes from Dakota. *Campbell et al. v. Richardson et al., supra,* and the Oklahoma territorial Supreme Court followed the construction placed on it by the Dakota Supreme Court in *Walter A. Wood M. & R. Machine Co. v. Lee,* 4 S. D. 495, 57 N. W. 238.

When plaintiff took his mortgage, interveners' mortgage was a valid subsisting lien, and being of record in compliance with the registration laws was notice to all persons, including plaintiff. This is conceded by plaintiff, but the contention is made that, with the failure of interpleaders to file the second renewal affidavit when required, that thereafter their mortgage was void as to plaintiff; we do not think so. Plaintiff took with notice and in hostility to the first mortgage, and under the law of his contract he never became a subsequent incumbrancer "in good faith for value" as against the first mortgage.

Almost this identical question is presented and so decided in *Howard v. First Nat'l Bank,* 44 Kan. 549, 24 Pac. 983, 10 L. R. A. 537, under practically the same statute. In that case the second mortgage was taken while the first was clearly alive under the Kansas statute, but when the matter got into suit the contention was made that an attempted renewal affidavit was void, and that therefore the first mortgage had expired and let the second one in to the exclusion of the first. After stating this contention the court says:

"We don't care to discuss the sufficiency of the affidavit, as we believe with the trial judge that under the circumstances of this case the renewal affidavit it not a material matter. The affidavit could only be material in case there were subsequent purchasers, or mortgagees in good faith."

And further:

"Because the language of the statute (paragraph 3905, Gen. St. 1889), 'every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year after the filing thereof, unless, within 30 days next preceding the expiration of the term of one year from such filing, and each year thereafter, the mortgagee, his

agent or attorney, shall make an affidavit,' etc., does not include intermediate purchasers or mortgagees; that is, purchasers or mortgagees who purchased, or, whose mortgages were taken, intermediate the time of filing of such mortgage and the end of the year during which it remains in force without the renewal affidavit, but means only purchasers and mortgagees who purchased or took their mortgages, after the expiration of the year, and after it became necessary to file a renewal affidavit to continue the mortgage in force. This construction is based upon reason. He who purchases after the year has expired during which a mortgage remains in force has a right, in the absence of the renewal affidavit, to suppose the mortgage has been paid, even though not released on the record. But he who purchases before the year expires takes with notice of the mortgage and the rights of the mortgagee under the same. If, therefore, the mortgagee fails at the end of the year and within the time prescribed by the statute to file his renewal affidavit, the purchaser is not affected adversely by the failure to file the affidavit, though the lien of the mortgage as to him remains intact. His rights are unaffected. They remain the same as before. He has invested nothing upon the strength of the failure of the mortgagee to file his renewal affidavit. At the time he purchased he knew of the incumbrance. This knowledge continues, and he may not be said to be a purchaser in good faith. The same reasoning applies to intermediate mortgagees. But we are not left to a decision of this question solely upon reason or principle. The great weight of authority sustains this view."

The following cases seem to be in point: *Meech v. Patchin,* 14 N. Y. 71; *Dillingham v. Bolt,* 37 N. Y. 198; *Newman v. Tymeson,* 12 Wis. 448; *Lowe v. Wing,* 56 Wis. 33, 13 N. W. 892; *Edson v. Newell,* 14 Minn. 228 (Gil. 167); *Frank v. Playter,* 73 Mo. 672; 6 Cyc. 1093, 1094, notes and cases cited.

(2) Counsel contend in the second point that the intervention in this case was not authorized by law. This, too, must be decided against them. The second mortgagee sued the mortgagor in replevin and took possession of the mortgaged property. It may be true that a judgment in this suit would not have determined the question against the holders of the first mortgage; but they, knowing of the matter, were justified in

feeling considerable concern over the situation. Their rights were being interfered with and their security appropriated. Why should they not ask to come into the case? They could have been made defendants under the terms of the statute. Section 5574, Comp. Laws 1909, says:

"When in an action for the recovery of real or personal property any person having an interest in the property applies to be made a party, the court may order it to be done."

Coming in by a petition in intervention merely made them parties. *Noble v. Worthy,* 1 Ind. T. 458, 45 S. W. 137. Had they not come in, plaintiff would have been forced to stand the expense of another suit over matters that could be determined fully, justly and without inconvenience in the suit they had begun. In *Clevenger v. Lewis,* 20 Okla. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56, this court, speaking through Justice Williams, has said:

"Where the intervener voluntarily appears and asks to intervene and have his rights determined in said cause, it is certainly within the power of the court to permit it. This jurisdiction ought always to be exercised to the ends of the furtherance of justice."

The right of a third party, who is a claimant of the property and its possession, to intervene in a replevin suit therefor is admitted in the following authorities: *Winchester v. Bryant,* 65 Ark. 116, 44 S. W. 1124; *Hamilton & Co. v. Duty,* 36 Ark. 474; *Newton v. Round,* 109 Iowa, 286, 80 N. W. 391; *Schmitt & Bros. Co. v. Mahoney et al.,* 60 Neb. 20, 82 N. W. 99; Cobbey on Replevin, 444-446; Wells on Replevin (2d Ed.) page 536.

The suit of plaintiff's was the assertion of a right to the possession of the mortgaged property. The intervention took issue with this assertion and set up a superior right to the animals and their possession. It would be difficult to demonstrate how plaintiff was injuriously affected by the allowance of the intervention. Had it been refused or not resorted to, interveners could have waited until plaintiff established his right to possession, as against the defendant, then brought

their suit against plaintiff for possession of the same property, and taken it, or, in case it had been sold, obtained its value to the extent of their interest. The same result was reached.

The cause should be affirmed.

By the Court: It is so ordered.