C. M. Keys & Co. *et al.* v. First National Bank of Claremore *et al.* and Vinita National Bank v. First National Bank of Claremore *et al.*

Nos. 853 and 866, Ind. T.   Opinion Filed September 10, 1908.
Opinion on Rehearing Filed September 14, 1909.

(104 Pac. 346.)

1. **CHATTEL MORTGAGES—Recordation—Change of Recording Office—Effects.** Where a chattel mortgage was filed or recorded, at Muskogee, in the Northern district of the Indian Territory, which was the proper place of recordation at the time thereof, and by a subsequent act of Congress the Northern district was sub-divided and Vinita made the recording office for the part of the Northern district in which the property mortgaged was situated, such change did not affect the validity of such recordation.

2. **SAME.** The record of a chattel mortgage, in a district where the property covered thereby lies, though upon sub-division of the district subsequent to the record of the mortgage the property may fall within the new district, is notice to purchasers or incumbrancers.

3. **SAME—Negligence of Recording Officer.** That part of the act of Congress providing for the record of deeds and other conveyances and instruments of writing in the Indian Territory, which provides that, "such instruments heretofore recorded with the clerk of the United States Court of the Indian Territory shall not be required to be again recorded under this provision, but shall be transferred to the indexes without further cost, and such record heretofore made shall be of full force and effect, the same as if made under this statute," casts no additional duties upon mortgagees who, prior to its passage, had filed or recorded their instruments in conformity with the recordation laws then in force.

(Syllabus by the Court.)

*Appeal from the United States Court for the Northern District, at Vinita, Indian Territory; Joseph A. Gill, Judge.*

*Modified.*

*William P. Thompson,* for appellant, The Vinita National Bank.

*Nev. Campbell* and *Robert F. Blair,* for appellants C. M. Keys and Co. and Stock Yards Bank.

*W. H. Kornegay,* for First National Bank of Claremore and First National Bank of Vinita.

*J. Howard Langley* and *C. J. Taylor,* for Citizens Bank, J. C. Hogan, and Mary D. Mayes.

Kane, J.   This suit was commenced on the the 20th day of July, 1905, by the appellee, First National Bank of Claremore, by filing its complaint at law in the United States Court for the Northern District of the Indian Territory, at Vinita, against Wat Mayes, alleging that the defendant, Wat Mayes, was indebted to the plaintiff in the sum of $4,386.09 on one certain promissory note, and the sum of $371.98 upon a second promissory note, and the sum of $111.82 on account.   On the same day it filed an affidavit in attachment, and caused an order of attachment to be issued against the property of Wat Mayes.   After the suit was commenced and attachment levied, numerous creditors of Wat Mayes made application to the court for leave to interplead and set up their respective claims to priority in the distribution of the estate of Mr. Mayes, who, at that time, was hopelessly insolvent. The court permitted the creditors to interplead, and the cause was referred to a master in chancery to make findings of fact and conclusions of law, and report the same to the court.   On the 23rd day of August the plaintiff and the various interpleaders made application to the court for the appointment of a receiver to take charge of and dispose of the attached property, and on the same day the court granted their prayer and appointed G. W. Mayes receiver, who afterwards qualified and took charge of and disposed of the attached property, and turned the proceeds thereof, amounting to $11,234.47, into court.   In due time the master made his report and the court entered a decree in accordance with the recommendations therein contained, and ordered that out of the money received from the sale of the attached property there be paid by

the receiver all costs, including the master's fee of $350.00, and that out of the remainder be paid the respective claims of the parties to the suit in full as far as the proceeds would extend, in the following order:

1. To First National Bank of Vinita, its claim, amounting to $4,144.42.

2. To First National Bank of Claremore, its claim, amounting to $5,413.99.

3. To Citizens' Bank of Pryor Creek, its claim, amounting to $2,083.33.

4. To J. C. Hogan, his claim, amounting to $6,801.96.

5. To Mary D. Mayes, her claim, amounting to $1,802.88.

6. To Vinita National Bank, its claim, amounting to $809.77.

7. To C. M. Keys and Company and Stock Yards Bank, their claim, amounting to $17,245.31.

From this judgment Vinita National Bank, and C. M. Keys and Company and Stock Yards Bank, prosecuted their separate appeals to the Court of Appeals of the Indian Territory, which appeals were consolidated in that court, and the cause came to this court under the terms of the Enabling Act and the schedule to the Constitution.

The grounds upon which the Vinita National Bank bases its right to a reversal of the judgment of the court below, are: That Wat Mayes, the original defendant, on the 15th day of December, 1899, was the owner of and in possession of a large herd of cattle, that were unincumbered. That in order to obtain credit at the Vinita National Bank for the sum of $4,500.00, he executed on said date his note for that sum, due 6 months after date, and as security for the payment of said note he also executed a chattel mortgage on said cattle, which said mortgage was by the First National Bank filed for record with the recorder of the Northern district of the Indian Territory. That said mortgage so filed was renewed from year to year by renewal affidavits filed in accordance with the provisions of the Statutes of Arkansas in force in the

Indian Territory. That the property taken under the writ of attachment consisted of part of the cattle included in said mortgage, and that said mortgage was a valid lien against said cattle at the time the writ of attachment was issued and levied.

C. M. Keys and Company and Stock Yords Bank base their right to reversal upon the grounds that on the 29th day of October, 1901, Wat Mayes, the original defendant herein, made, executed and delivered to said C. M. Keys and Company his promissory note for $34,804.04, payable 6 months after date, and to secure the payment of said note said defendant on said date made, executed and delivered to said C. M. Keys and Company a chattel mortgage upon 2835 head of mixed cattle and their increase and additions thereto, kept and located in the Northern district of the Indian Territory, about 3 miles southeast of Pryor Creek in said Territory. That on the 31st day of October, 1901, said C. M. Keys and Company filed said chattel mortgage for record in the office of the clerk of the United States Court, then *ex offiico* recorder for the Northern district of the Indian Territory, at Muskogee; which mortgage was duly recorded in said office by the clerk. That said mortgage covered all the property taken under the writ of attachment. That after the date of said notes and before the same become due the said C. M. Keys and Company, for a valuable consideration, sold and transferred said note to the Stock Yards Bank by indorsement and assigned and transferred to the Stock Yards Bank said chattel mortgage given by said defendant to secure said note. That when said note became due said defendant, Wat Mayes, was unable to pay the same in full, but made settlement by paying part of the indebtedness recited in said note and by giving his note for the remainder thereof, and that from time to time thereafter said defendant, Wat Mayes, made various payments upon said note, until on, to wit, the 1st day of March, 1905, he made, executed, and delivered to said C. M. Keys and Company one certain promissory note for $12,026.74, payable to the order of said C. M. Keys and Company 6 months after

Vol. 22—12

date at National Stock Yards Bank. That before said last named note became due, for a valuable consideration, and in due course of business, said C. M. Keys and Company indorsed said note to said Stock Yards Bank which notes were all covered in said $34,-804.04 note secured by said chattel mortgage. That on the ............... day of February, 1905, said defendant, Wat Mayes, made, executed, and delivered to said C. M. Keys and Company his promissory note for $500.00. That from time to time various payments were made upon said notes, but after deducting all of said payments so made by said defendant, a balance of $15,288.69 was still due upon said notes.

The foregoing statement of facts is in practical harmony with the undisputed evidence. Counsel for all the parties filing briefs admit that the main questions of law involved are:

1. Was it necessary for appellants, under chap. 888, U. S. Stat. at Large, approved May 27, 1902, which divided the Northern district of the Indian Territory into two parts, making the office of the clerk of the United States Court at Vinita, Indian Territory, the recording office for the Northern district, to record their mortgages at Vinita, when they had already filed or recorded them in the office of the clerk at Muskogee?

2. Was it necessary, in order to preserve their liens upon the cattle described in their mortgages filed and recorded at Muskogee, to have such mortgages indexed at Pryor Creek, Indian Territory, under chap. 707, U. S. Stat. at Large, approved February 19, 1903?

The master found that subsequent to the passage and approval of the Act of Congress of the 27th day of May, 1902, it was the duty of the appellants, if they desired to preserve their liens as against subsequent mortgagees or additional creditors, to have their mortgages filed or recorded at Vinita, Indian Territory, and after the passage and approval of the Act of Congress of the 19th day of February, 1903, *supra,* to index their mortgages at Pryor Creek, and, in as much as appellants had failed to do these things their

mortgages were void as to subsequent attaching creditors and mortgagees.

The court, in its decree, in addition to adopting the conclusions of . the master, further found that the mortgage of the appellants, C. M. Keys and Company and Stock Yards Bank, was an absolute fraud by reason of their failure to notify people of the various payments that had been made and the transfers that were made.

At the time the mortgages were made, executed, and delivered, and at all subsequent times up to the sale by the receiver, the cattle involved in this controversy were kept and located in the Northern district of the Indian Territory, about 3 miles southeast of Pryor Creek, in district number 5, Vinita and Pryor Creek, respectively, being the places of recordation after the passage of the Act of Congress dated the 27th day of May, 1902, *supra,* and after the passage of the Act of Congress dated the 19th day of February, 1903, *supra.*

It was admitted that all the creditors, except Mary D. Mayes, had actual knowledge of the existence of the chattel mortgages of the Vinita National Bank and C. M. Keys and Company.

From time to time Congress made such provisions for the recordation of mortgages in the Indian Territory as was deemed necessary to meet the needs of the people under the conditions therein existing. By the law in force at the time the mortgages herein were given, filed, and recorded Muskogee was the proper recording office for the district in which the property was situated. At that time these mortgages were filed, in the case of the Vinita National Bank, and recorded, in the case of C. M. Keys and Company, at the proper place and in the manner required by law. By the Act approved May 27, 1902, 32 U. S. Stat. at Large, 888, the Western district was carved out of the Northern district, and Muskogee remained the recording office for the Western district, and Vinita was made the recording office for the new Northern district. The language of the act concerning the recording office for the Northern district reads as follows:

"That the clerk's office at Vinita shall also be the recorder's office for the Northern district, except that the clerk's office at Miami shall continue to be the recording office ·for the Quapaw Indian Agency as now provided by law."

Congress did not consider it necessary to provide by the act forming the Northern district and providing that the clerk's office at Vinita should be the recorder's office therein, that mortgages theretofore recorded in the Northern district before division should again be recorded in the new district in order to preserve and continue the public notice given by the original recordation. Congress merely divided the district, leaving Muskogee, which had been the recording office for the whole district prior to the division, the recording office for the Western district and making Vinita the recording office for the Northern district. No provision was made for re-recording instruments covering property which after the division would be in the new Northern district, at Vinita. Under such circumstances it cannot be said that it was incumbent upon mortgagees herein, having complied with the law as it was at the time they took their mortgages, to re-file or re-record them at Vinita, after the division of the district, in order to give constructive notice to subsequent purchasers or incumbrancers.

"Where the deed is deposited for record in the office of the recorder of the county in which the land is located at the time, and· by a subsequent sub-division the land falls within the boundaries of another county, such change will not affect the validity of the registration." (Wade on Notice, sec. 195.)

In *Melton, et al. v. Turner,* 38 Tex. 81, Mr. Justice Walker says:

"The record of a deed in a county where the land lies, though upon subdivision of the county subsequent to the record of the deed the land may fall within the new subdivision, is notice to purchasers."

The foregoing authorities seem to be decisive of the first proposition involved in this case.

On the second proposition we are of the opinion that that part of the "Act providing for record of deeds and other convey-

ances and instruments of writing in Indian Territory," which provides that "such instruments heretofore recorded with the clerk of the United States Court of the Indian Territory shall not be required to be again recorded under this provision, but shall be transferred to the indexes without further cost, and such record heretofore made shall be of full force and effect, the same as if made under this statute," casts no additional burdens or duties upon the mortgagees in relation to transferring to the indexes mortgages which had theretofore been properly filed or recorded in the proper recording office. We do not believe that a fair construction of the language above quoted will justify the interpretation sought to be given to it by counsel for the appellees or the conclusions of law drawn from the facts by the court below. The language of the act does not in so many words make it the duty of the mortgagees to transfer their mortgages to the indexes; neither does it directly cast this burden upon the clerks of the court, but we believe the implication is much plainer that it was intended that the clerk should do such work than that it should be performed by the mortgagees. The act of Congress specifically provides, "such instruments heretofore recorded with any clerk of the United States Court shall not be required to be again recorded under this provision,—and such record heretofore made shall be of force and effect the same as if made under this statute." The part of the act that caused the original plaintiff and the interveners to attack the mortgages of C. M. Keys and Company and the Vinita National Bank is that part enclosed in the above clause by commas, which reads: "But shall be transferred to the indexes without further costs." We have no doubt that the indexes referred to had reference to the system of recordation prescribed by the laws of Arkansas, as modified by acts of Congress, which were then in force in the Indian Territory, and that it was the intention of Congress that the transferring to the indexes should be done by the same officer who under said laws had charge of such indexes.

Section 5560, Mansfield's Digest, *supra,* provides that:

"When any deed, mortgage, deed of trust, bond, conveyance or other instrument of writing authorized by law to be recorded shall be deposited in the recorder's office for record, the recorder shall enter in a book to be provided for that purpose, in alphabetical order, the names' of the persons and date and nature thereof, the time of delivery for record," etc.

Section 5565, provides that:

"Each recorder shall, in like manner, make, keep and preserve a full and perfect alphabetical index to all books of record in his office wherein all deeds and instruments of writing in relation to personal property, marriage contracts, certificates of marriage and all other papers are recorded," etc.

It will be noticed that wherever "indexes" or "indexing" is mentioned, such work is always to be done by the recorder, and never by the mortgagor or mortgagee. Another indication, to our mind, that the recorder was to transfer these instruments to the indexes is the statement that it should be done "without further cost." The recorder is the person who ordinarily does such work and who is always paid for it. The act above quoted made it the duty of someone to do this clerical work without further cost, which evidently meant that the proper person to do it would be the person who had hitherto been entitled to receive fees for like services in relation to the same class of instruments.

Furthermore, Section 4743, Mansfield's Digest, provides that:

"Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

Section 4750, Mansfield's Digest, provides that:

"Whenever any mortgage or conveyance, intended to operate as a mortgage on personal property, or any deed of trust upon personal property, shall be filed with any recorder in this state, upon which is indorsed the following: 'This instrument is to be filed but not recorded,' and which indorsement is signed by the mortgagee, his agent or attorney, the said instrument, when so

received, shall be marked, 'Filed' by the recorder, with the time of filing upon the back of such instrument; and he shall file the same in his office, and it shall be a lien on the property therein described from the time of filing, and the same shall be kept there for the inspection of all persons interested; and said instrument shall be thenceforth notice to all the world of the contents thereof without further record, except as hereinafter provided."

The mortgage of Vinita National bank was filed under the provisions of the first section, and the mortgage of C. M. Keys and Company was recorded at length; these were the recognized ways, under the Laws of Arkansas in force in the Indian Territory, of giving constructive notice to the world of the existence of chattel mortgages. The act of Congress that provided that chattel mortgages so recorded shall be transferred to the indexes without further cost did not annul the filing or recording required by the laws of Arkansas, nor can it be said to have made such "filing" less efficacious to give constructive notice to the world than it was before. It is "filing," and not "recording," or "transferring to the indexes," that constitutes notice under the law, and as these mortgages, at the time they were made, were "filed" according to the laws then in force, it must be held that they were notice to all persons of their existence, and that they continued to be so notwithstanding the foregoing changes of the recording acts.

Counsel for Citizens Bank *et al.* argue in their brief:

"Again, if it is the duty of the clerk, let us inquire what particular clerk's duty it is, so that we may fix responsibility on somebody. Surely not the duty of the clerk at Pryor Creek, for how is he to know that appellants have a mortgage on record at Muskogee which should be indexed at Pryor Creek? Surely not the clerk at Muskogee, for he has no control over the Pryor Creek records."

We do not believe the above objections to be insuperable barriers to the performance of the duties required of the recorder by the act of Congress, and such excuse for non-performance was not urged by him as a reason for non-performance. In answer to

a question put to him at the trial as to why he had not transferred all such mortgages to the indexes, he answered: "Simply because the act of Congress—there was no appropriation for it." And that was probably the real reason why it was not done; that it was not his duty to have done so seems never to have occurred to him. It is a universal rule that omissions by a public officer in the mode of complying with forms prescribed to him by the law as his duty, are not permitted to affect other parties who are not · in fault. The following cases are cited by counsel for the Vinita National Bank to support this proposition: *Oats v. Walls.* 28 Ark. 245; *Case and Co. v. Hargadine,* 43 Ark. 144; *U. S. v. Castillero,* 2 Black, 1-95; Jones on Chattel Mortgages, 3rd. Ed., Secs. 271-2.

There is no question of actual fraud in this case, nor is there claimed to be any. The court below found that the original plaintiff was indebted to all the parties in amounts they alleged, and that their various promissory notes and chattel mortgages were perfectly valid and legitimate. The First National Bank of Claremore started the proceedings on the theory alone that the mortgages of C. M. Keys and Company and Stock Yards Bank and Vinita National Bank were not constructive notice to subsequent purchasers and incumbrancers because they had not been transferred to the indexes, and commenced its attachment suit, and all the other creditors came in and got such security as they could for the amounts due them, and the only question of serious dispute was the order in which each creditor should be paid out of the proceeds arising from the sale of the cattle. We believe the mortgages of the appellants, The Vinita National Bank and C. M. Keys and Company and Stock Yards Bank, were perfectly valid instruments and their acts in placing them of record and keeping them alive were in substantial compliance with the laws relating to recordation. Believing this and finding no reversible error in the remaining contentions of appellees, it follows that all the claims should be paid in the order of their respective dates, viz:

First, the .Vinita National Bank; second, C. M. Keys and Company and Stock Yards Bank; the other creditors taking their places after the Vinita National Bank and C. M. Keys and Company and Stock Yards Bank for the. amounts and in the order decreed by the court below.

Let the judgment of the court below be modified to conform with this opinion.

All the Justices concur.

On Rehearing.

Opinion Filed September 14, 1909.

Former opinion, as herein supplemented, adhered to.

Per Curiam: A rehearing was granted in this case upon the ground that the renewal affidavits of the Vinita National Bank mortgage were not in conformity with the law governing such renewals at the time they were made. Upon a more careful examination of the record it appears that the master found "That said mortgage has since been renewed by filing renewal affidavits in the office of the clerk of the United States Court and ex-officio recorder, at Muskogee, Indian Territory, on the following dates: December 14, 1900; December 12, 1901; December 20, 1902; December 14, 1903; December 12, 1904. That thereafter defendant made payments on said note, and reduced the amount thereof to $729.04, which sum is due said Vinita National Bank from said defendant." No exception was saved to this finding below, nor is there any cross-appeal or assignment of error in this court raising the question by any one who would be injured by the preference given this security. C. M. Keys and Company and Stock Yards Bank acknowledged the validity of the Vinita National Bank mortgage, and as the payment of their claim would more than exhaust the funds accruing from the sale of the property involved, no one else could be benefited by displacing the Vinita

National Bank from its place of vantage as a creditor unless C. M. Keys and Company and Stock Yards Bank could also be displaced.

We believe, however, that we reached the right conclusion in our former opinion, but, as counsel for the defendants in their briefs on rehearing urge with earnestness certain propositions that they touched upon casually in their former brief, we will further notice these propositions here. They are: (1) That the C. M. Keys and Company mortgage was good between the parties, but was not good as against third parties, because not properly acknowledged, and (2) it is further insisted that the said C. M. Keys and Company mortgage was "fraudulent at the time of running the attachment, and the fraud came out from the dealings with reference to the cattle and was actual, and that there was so much actual fraud that on the admitted and proven facts the mortgage was void."

I. The C. M. Keys and Company mortgage was introduced in evidence without objections, the master making no finding as to the sufficiency of the acknowledgment, and the court below did not notice the question in any way, nor did counsel for any of of the numerous parties. The first time, as far as the record discloses, that this question was raised was in this court by counsel for First National Bank of Claremore and First National Bank of Vinita in his brief. The point he seeks to make is, that the acknowledgment is not in conformity with section 656, Mansfield's Digest, which was in force in the Indian Territory when the mortgage was executed, in that the words, "and set forth" were omitted from the acknowledgment. Section 656, *supra,* provides that:

"The acknowledgment of all deeds, instruments in writing, for the conveyance of real estate, or that affect such real estate in law or in equity, shall be by the grantor presented to such court or officer having authority by law to take such acknowledgment, and state that the same was executed for the consideration therein mentioned and set forth."

It is true that the last three words of the above section are omitted from the acknowledgment, but we do not believe that this

omission makes the instrument void. To our mind these words add nothing to the meaning of the language of the section. The words "and set forth" may be a little more appropriate than the word "mentioned" in referring to the contents of a written instrument, but if there is anything in the instrument that is mentioned, it must be also set forth, and if it is "set forth," it must be "mentioned" therein according to the meaning of the words, as used in that section. At any rate the acknowledgment is substantially in the form prescribed by the statute and that, to our mind, is sufficient.

II. As disclosed by the pleadings, this controversy was commenced by the First National Bank of Claremore bringing an original suit on the promissory note and an open account and having an attachment issued. Then all the other parties came in and set up their respective claims. The answer of the First National Bank of Claremore to the interplea of C. M. Keys and Company and Stock Yards Bank discloses the issues upon which the case was tried. Omitting the caption, title and signature thereto, it reads as follows:

"The plaintiff herein for answer to the interplea of C. M. Keys & Co., a partnership composed of John M. Keys and Hugh Mills, and Stock Yards Bank, says: That it has not sufficient knowledge or information to form a belief as to whether or not the defendant, Wat Mayes, is indebted in any manner to the interpleader, and it has not sufficient knowledge or information to form a belief as to whether or not the defendant, Wat Mayes, executed any note to the interpleader, or whether the interpleader holds any note executed by him; and it says it has not sufficient knowledge or information to form a belief as to whether or not the interpleader holds any mortgage executed by Wat Mayes, or anyone else, upon the property attached in this case. Neither has it sufficient knowledge or information to form a belief as to whether or not any mortgage so executed was recorded or filed for record at any place. It therefore denies that the interpleader herein holds any note or mortgage executed by Wat Mayes; and it therefore denies that the interpleader herein has any lien for any sum upon the property attached in this case, and it prays for judgment for its costs."

It will be seen from these pleadings that no question of fraud was alleged by any of the parties against the other. The referee made no finding on the question, and the only intimation that it cut any figure in the case is a finding of the court, "That the mortgage of C. M. Keys and Company is an absolute fraud, by reason of their failure to renew or to advise people in any way, shape or form of the various payments that had been made and the transfers that had been made." The court below adopted the report of the master *in toto* and inserted it in his decree, just as it was reported, with the exception of the above conclusion. The court below must, of course, have been of the opinion that this conclusion was warranted by the evidence or some finding of fact of the master, but we are unable to find the evidence or finding which to our mind supports it. The case was tried below upon the theory that the chattel mortgages attached were void because they were not transferred to the indexes after the change in the registration laws and formation of new recording districts, and there are no averments in the pleadings, nor was there any evidence offered at the trial, or any findings of fact by the master, upon which to base the conclusion of the court.

The finding of the master in relation to the C. M. Keys and Company transactions with Wat Mayes is to the effect that on the 28th day of October, 1901, the defendant Wat Mayes made, executed, and delivered to C. M. Keys and Company his certain promissory note in the sum of $34,800.04, with interest thereon at the rate of eight per cent. per annum from date thereof; that said defendant, to secure said note, made, executed, and delivered to said C. M. Keys and Company, a chattel mortgage upon certain described property. That said mortgage was filed for record in the office of Charles A. Davidson, clerk of the United States Court and *ex-officio* recorder in the Northern district of the Indian Territory, at Muskogee, Indian Territory, on the 31st day of October, 1901, at two o'clock p. m., and recorded in Book M, page 286; that thereafter and before said note became due, said C. M. Keys and Company, for a valuable consideration, sold and

transferred said note to Stock Yards Bank, presentment, demand, protest, and notice of protest being waived and payment at maturity guaranteed by said C. M. Keys and Company; that thereafter said defendant made settlement with said Stock Yards Bank by payment of a portion of said note and executed and delivered his promissory note for the remainder thereof, and from time to time thereafter said defendant made various payments upon said indebtedness, and on the 1st day of March, 1905, made, executed, and delivered his promissory note as an evidence of the remaining indebtedness due said C. M. Keys and Company, in the sum of $12,026.74, together with interest thereon at the rate of seven per cent. per annum from date thereof; also one certain promissory note of date January 16, 1905, in the sum of $2,970.95, payable to the order of C. M. Keys and Company, together with interest thereon at the rate of seven per cent. per annum from date thereof; that thereafter, and before said notes became due, for a valuable consideration, said C. M. Keys and Company indorsed, negotiated, and sold to intervenor, Stock Yards Bank, said notes, together with the mortgage heretofore described. That there is now due and unpaid upon said indebtedness the sum of $15,288.69. That all of said indebtedness as evidenced by said notes is included in and covered by said mortgage.

From the foregoing findings of fact it is apparent that the indebtedness to C. M. Keys and Company and Stock Yards Bank was not due at the time the attachment suit was commenced; that there was a large sum due C. M. Keys and Company and Stock Yards Bank from Wat Mayes, and that this sum was secured by the chattel mortgage now under consideration. No exceptions were saved to any of these findings.

Counsel for defendants in error insist that the fraud that vitiated the mortgages of C. M. Keys and Company and Vinita National Bank and made them void as against attaching creditors, is evidenced by the length of time after maturity they had remained unforeclosed, and by reason of the manner in which the evidence shows the cattle had been dealt with by the respective

parties. We cannot agree with counsel in this contention. There is a clause in the part of the mortgage describing the promissory note originally given to C. M. Keys and Company, as follows:

"One note for $34,800.04, dated Oct. 28, 1901, payable one month after date all payable at the office of C. M. Keys & Co., Nat. Stock Yds., Ill., and all with interest thereon at the rate of eight per cent. per annum from date or according to the terms of any renewal or extension of said note which may be made by consent of said second party, its successors or assigns, and may be evidenced by the execution of new note or notes in place of said original note at or after maturity, for the amount of the debt then unpaid and any renewals or extensions thereof, and which said note the party of the first part hereby agrees to pay on maturity thereof."

The findings of fact of the master in chancery do not disclose that said C. M. Keys and Company or their assigns did anything they were not entitled to do by the terms of the mortgage. They had received payments from time to time and extended the time of payment by renewals. All this, by the terms of the mortgage, seems to be proper enough. It does not appear that any of the defendants in error gave Wat Mayes credit on the strength of the cattle covered by this mortgage or that they were prejudiced in any way by the dealings of Wat Mayes with C. M. Keys and Company or their assigns in relation to the property mortgaged. So, aside from the rule that fraud is never presumed, and in order to entitle a party to relief on that ground it is essential that the fraud be distinctly alleged in the pleadings so that it may be put in issue and evidence thereof given, the charge of said fraud, by the defendants in error, upon the merits, seems to be without foundation.

Counsel for the First National Bank of Vinita and the First National Bank of Claremore state in their petition for a rehearing that if the former opinion is followed, "C. M. Keys & Company will receive the proceeds of the lots that on the petition of Vinita National Bank were marshaled in this case, and that C. M. Keys & Company have no lien whatever upon said lots until the claims of First National Bank of Claremore and First National

State *ex rel.* v. Barnes, Mayor, *et al.*

Bank of Vinita are fully paid." As far as the record and briefs of counsel disclose, there was no dispute over the distribution of the funds arising from the sale of the assets of Wat Mayes, except that occasioned by the ruling of the court below on the question of the validity of the chattel mortgages held by C. M. Keys and Company or their assigns, and Vinita National Bank, and the decree of the court below is only disturbed in so far as it is based upon the court's findings that these chattel mortgages were void as against subsequent creditors or incumbrancers.

The former opinion of the court, as herein supplemented, is adhered to.

All the Justices concur, except Turner, J., disqualified, not participating.