THE FIRST NATIONAL BANK OF MILES CITY, Appellant, *v.* MARSHALL et al., Respondents.

(No. 3,533.)

(Submitted September 13, 1915.    Decided September 30, 1915.)

[152 Pac. 36.]

*Chattel Mortgages—Renewal—Single Debt—Several Notes— Statutory Provisions—Subsequent Encumbrancers.*

Chattel Mortgages—Renewal—Single Debt—Several Notes.
   1.   A single debt secured by one chattel mortgage did not become two separate debts by the giving of two promissory notes, one of which was payable within six months and the other within a year, so as to require the filing of an affidavit of renewal of the mortgage within sixty days

after the due date of the first note, as would have been the case, under section 5763, Revised Codes, if one or both of the notes had fallen due after the lapse of one year.

[As to who is creditor entitled to attack validity of chattel mortgage on ground of failure to file or renew, see note in Ann. Cas. 1912B, 1106.]

Same—Compliance With Statute.

2.    The validity of a chattel mortgage in the first instance, the duration of the lien created by it, and the right to extend or renew it, rest upon a compliance with the provisions of the statute.

Same—Taking Possession of Property.

3.    Where a chattel mortgage stipulates that the mortgagee may, at the due date of the first of two notes secured by the mortgage, take possession of the property, he is not bound to do so to preserve his lien, but may exercise his option in this regard; the lien not being impaired in any wise by nonaction in this respect.

Same—Subsequent Encumbrancers.

4.    *Quaere:* May a subsequent encumbrancer, with knowledge of a prior mortgage, during its life insist that he acquired a superior right by the failure of the first mortgagee to renew his lien?

[As to failure to renew chattel mortgage as affecting purchaser of property before lien of mortgage had expired, see note in 47 L. R. A. (n. s.) 1137.]

*Appeal from District Court, Custer County; C. C. Hurley, Judge.*

ACTION by the First National Bank of Miles City, a corporation, against W. C. Marshall and the Commercial State Bank of Miles City. From a judgment for defendant bank, plaintiff appeals. Affirmed.

*Mr. Geo. W. Farr,* for Appellant, submitted a brief and argued the cause orally.

As we view the language of sections 5762 and 5763, Revised Codes, it became necessary for the Commercial State Bank, in order to maintain and sustain the validity of its mortgage lien as against the plaintiff, a subsequent mortgagee of Marshall, to file an affidavit of renewal as provided by section 5763, within sixty days after the six months note for $7,670 became due, and upon its failure to do so it lost its mortgage lien so far as the payment of that note was concerned, as against this appellant. We concede that there is a conflict of authorities on the question presented but we submit that giving the language of the statute its ordinary construction and meaning, the position

for which the appellant here contends should be sustained, in support of which we cite the following authorities: *Main* v. *Alexander,* 9 Ark. 112, 47 Am. Dec. 732; *Watkins* v. *Wassell,* 15 Ark. 73; *Hannah* v. *Carrington,* 18 Ark. 85; *Wright* v. *Graham,* 42 Ark. 140; *Ely* v. *Carnley,* 19 N. Y. 496; *Steele* v. *Benham,* 84 N. Y. 634; *Porter* v. *Parmley,* 52 N. Y. 187; *Marsden* v. *Cornell,* 62 N. Y. 215, 219.

*Messrs. Loud, Collins, Campbell, Wood & Leavitt,* for Respondents, submitted a brief; *Mr. Chas. S. Loud* argued the cause orally.

The general rule of law is that unless the language of the instrument expresses a contrary intention, the failure to pay the first installment of the mortgage constitutes a breach of the condition of the mortgage, and in the event such default in payment is made, it is optional with the mortgagee whether he will take possession then or wait until the maturity of the other installments. (7 Cyc. 82; *Chapin* v. *Whitsett,* 3 Colo. 315; *Wilson* v. *Rountree,* 72 Ill. 570; *McConnell* v. *Scott,* 67 Ill. 274; *Wheeler & Wilson Mfg. Co.* v. *Howard,* 28 Fed. 741; *Marseilles Mfg. Co.* v. *Rockford Plow Co.,* 26 Ill. App. 198.) The same general rule is announced in 5 Am. & Eng. Ency. of Law (2d ed.), p. 1002. It is our contention that, under the general rule above, the respondent had the right to exercise its option and wait until the maturity of the whole debt secured by the mortgage before he was required to take possession thereunder or institute an action for its foreclosure.

We have carefully examined all of the cases cited by the appellant in his brief, with the exception of the cases reported in 15, 18 and 42 Arkansas Reports, which are not available to us. We do not find a single one of the cases cited by plaintiff which we have examined in which the point under discussion was involved or decided. In four of these cases the rights of attaching creditors and judgment creditors were involved, and in the other case the rights of a *bona fide* purchaser was the particular question involved in that case.

The appellant bank was not a subsequent encumbrancer within the purview of these statutory provisions, and was not in a position to successfully attack the priority of respondent's mortgage. (*First State Bank* v. *King & McCants*, 37 Okl. 744, 47 L. R. A. (n. s.) 668, 133 Pac. 30; *Howard* v. *First National Bank*, 44 Kan. 549, 10 L. R. A. 537, 24 Pac. 983; *Meech* v. *Patchin*, 14 N. Y. 71; *Casner* v. *Crawford*, 4 Kan. App. 687, 46 Pac. 41; *Arlington Mill & Elevator Co.* v. *Yates*, 57 Neb. 286, 77 N. W. 677; *Huber Mfg. Co.* v. *Sweny*, 57 Ohio St. 169, 48 N. E. 879; *Walter A. Wood Mowing & Reaping Machine Co.* v. *Lee*, 4 S. D. 495, 57 N. W. 238; *Wells, Fargo & Co.* v. *Alturas Commercial Co.*, 6 Idaho, 506, 56 Pac. 165; *Goodwin* v. *Bayerle*, 18 Misc. Rep. 62, 41 N. Y. Supp. 20; *Smith* v. *Simper*, 15 Ohio C. C. 375; *Marsden* v. *Cornell*, 62 N. Y. 215; *Schnavely* v. *Bishop*, 8 Kan. App. 301, 55 Pac. 667.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an appeal by the plaintiff, the First National Bank of Miles City, Custer county, from a decree rendered against it and in favor of defendant Commercial State Bank, of the same place, hereafter referred to as the defendant bank, in an action brought by the former to foreclose a mortgage executed to it by the defendant Marshall. This defendant failed to appear and his default was entered. Though formal issues were made between the plaintiff and the defendant bank, the cause was submitted for decision upon an agreed statement of facts, which may be epitomized as follows:

On December 13, 1910, Marshall, being indebted to the plaintiff in the sum of $2,290.85, executed to it his promissory note therefor, due in six months after December 30, 1910, with interest at ten per cent per annum, and also attorney's fees in case resort to legal proceedings was necessary in order to enforce collection. To secure payment of this note he executed and delivered to the plaintiff a mortgage upon certain horses and other personal property in Custer county. The mortgage

contained this recital: "Said property is clear of encumbrances, except two notes to the Commercial State Bank of Miles City, one for ($8,000) eight thousand dollars, and one for ($7,670) seven thousand six hundred seventy dollars, secured by mortgage upon above property."

This mortgage was duly acknowledged and recorded. Theretofore, on November 29, 1910, Marshall, being indebted to the defendant bank in the sum of $15,670, executed to it the two notes mentioned in plaintiff's mortgage, the one for $7,670, due and payable in six months thereafter, and the other for $8,000, due and payable in twelve months, each containing the same stipulations for interest and attorney's fees as that due to plaintiff. To secure the payment of them he executed to the defendant bank a mortgage upon the property included in plaintiff's mortgage. The consideration named therein was the sum of $15,670, and it was stipulated that this sum, with interest, should be paid at the expiration of one year from date, according to the terms and tenor of the two notes. Both mortgages contained the usual stipulations prohibiting removal of the property, *etc.*, and, in case the notes secured by them should not be paid at maturity in accordance with their terms, authorizing the mortgagees, at their option, to take possession of it and cause it to be sold, and to apply the proceeds to the discharge of the indebtedness. None of the indebtedness due the plaintiff was ever paid, except the sum of $290 paid on August 23, 1911. On July 10, 1911, plaintiff's mortgage was renewed by the filing of a renewal affidavit as provided by the statute. On August 18, 1911, Marshall paid to the defendant bank $650, and on October 11, $7,823, both of which sums were applied to the discharge of the note for $8,000. These amounts consisted of the proceeds of sales of portions of the mortgaged property made by Marshall with the consent of both mortgagees. When this action was brought, there was due to the defendant bank upon the $8,000 note a balance of $224.78, besides the full amount of the note for $7,670, with interest. On January 12, 1912, the defendant bank filed an affidavit in renewal of its mortgage, in

which it claimed that there was still due to it the sum of $8,666.10. During the pendency of the action, and by the consent of plaintiff and the defendant bank, the court appointed a receiver, with directions to take possession of and sell the remainder of the mortgaged property and to pay the proceeds into the hands of the clerk, subject to the order of the court. This he did, realizing therefrom the sum of $2,971.30.

In submitting the cause as they did, it was the purpose of the [1] parties, as appears from the recitals in the statement of facts, to present and have determined the single question whether, by failing to file its affidavit of renewal of its mortgage until after the lapse of sixty days from the date of the maturity of the note for $7,670, the defendant bank lost the lien of its mortgage *pro tanto*, and for this reason the plaintiff is entitled to have the sum of money in the hands of the clerk, less the small balance due on the note for $8,000, applied to the discharge of the note secured by its mortgage.

The district court held that the lien of the defendant bank was in no wise impaired by its omission to renew its mortgage upon the maturity of the first note, and hence that it was entitled to have the funds in the hands of the clerk applied to the balance due it. The sole question presented by the appeal is whether this holding is correct. The contention of counsel for plaintiff is that, though the amount due the defendant bank prior to the mortgage transaction was a single debt, the taking of the two notes converted it into two separate debts, or, in any event, into a debt due and payable in installments, and that it was incumbent upon it to file the affidavit of renewal within sixty days after the first note matured, or resort to the alternative of taking possession of the property, at the peril of losing its lien as to this note. As appears from a memorandum opinion found in the record, the district court concluded, upon the facts, that the debt, though payable in two installments, was a single debt, and that the necessity for renewal arose only after the maturity of the second note. The conclusion that the two notes represented a single debt, and were so regarded by

the parties, is fully justified by the statement of facts. The consideration recited in the mortgage was the gross sum due, and it is stipulated that Marshall was indebted to the defendant bank in that sum. The contention of counsel assumes that the debt was originally single. The stipulations in the mortgage are somewhat inconsistent with each other, and render it somewhat ambiguous as to what was the intention of the parties with reference to the date at which payment of any part of the sum could be lawfully demanded. Even this, however, tends to show that both regarded the two notes as representing a single indebtedness.

But, aside from these considerations, does an arrangement between a creditor and his debtor, by which the latter is permitted to discharge his obligation in installments, change the character of it, so that each installment becomes a separate debt? We think not. If a single note had been executed by Marshall, payable in two or more installments, it could not be said that each installment was a distinct debt. With no greater propriety may it be urged that the execution of two notes wrought a different result. True, such an arrangement may affect the manner and time of enforcing payment of the different installments, but the indebtedness and the obligation to discharge it remains the same.

The right to hypothecate personal property as security by means of a chattel mortgage, as this expression is ordinarily used, is of statutory origin. Its validity in the first instance, [2] the duration of the lien created by it, and the right to extend or renew it, rest upon a compliance with the provisions of the statute. (*Rosenbaum Bros.* v. *Ryan Bros. Co.*, 33 Mont. 424, 84 Pac. 1120.) Section 5762 of the Revised Codes declares: "Every mortgage of personal property, made, acknowledged and filed, as provided by the laws of this state, is thereupon, if made in good faith, good and valid as against the creditors of the mortgagor or subsequent purchaser, or encumbrancers, from the time it is so filed until the maturity of the entire debt or obligation secured thereby and for the period of sixty days

thereafter.   The entire period of the time such mortgages are valid and binding against the creditors of the mortgagor and subsequent purchasers and encumbrancers must not exceed one year and sixty days, except by a compliance with the provisions of the next section.''

Section 5763, so far as it is pertinent here, provides that: ''Every mortgage of personal property made, acknowledged and filed as provided for by the laws of this state, may be renewed at any time within sixty days after the maturity of the debt or obligation secured thereby, in case such debt or obligation or any part thereof, be unpaid or unfulfilled, by the filing of an affidavit showing the date of such mortgage, the name of the mortgagor and mortgagee, the date of filing the same, the amount of the debt or obligation secured thereby, and the amount of the debt justly owing at the time of filing such affidavit, or the conditions of the obligations unfulfilled;  *  *  * Provided that in case the debt for which any mortgage is given as a security is payable in two or more installments any one or more of which are to become due and payable after one year from the date thereof, then in such event the affidavit of extension of such mortgage herein provided for must be made and filed within sixty days after the first installment of said debt falls due whether such installment be paid or not and must be made and filed within sixty days after each subsequent installment falls due whether the same be paid or not until the entire debt secured thereby shall be fully paid.   And provided further that such installments shall become due and payable not more than one year apart, and the first of said installments shall fall due not more than one year from the date of such mortgage.''

The former section clearly recognizes the right of parties to secure debts payable in installments, whether the agreement for payment is embodied in a single note or in several, for it expressly declares the lien valid if contracted for in good faith, as against creditors of the mortgagor, or purchasers or encumbrancers, until the *entire* debt or obligation has matured, and until the expiration of sixty days thereafter.   The use of the

word "entire" implies this; otherwise, its presence in the statute means nothing. The latter provision contains nothing to the contrary, but recognizes the existence of the lien mentioned in the former, and merely prescribes the method to be observed to effect the extension or renewal. The limitations embodied in the provisos have no application to debts payable in installments, unless one or more of the installments mature after the lapse of one year. But the fact that these provisos deal expressly with the class of debts therein described, and prescribe a special method for the renewal of mortgages given to secure them, furnishes strong support for the notion that the legislature intended that the former provision should apply to debts payable within one year in any manner agreed upon between the parties. This view is in entire accord with the rule recognized by the courts in jurisdictions where similar statutes are in force. (*Barbour* v. *White*, 37 Ill. 164; *Cleaves* v. *Herbert*, 61 Ill. 126; *Chapin* v. *Whitsett*, 3 Colo. 315; 7 Cyc. 82; Jones on Chattel Mortgages (5th ed.), sec. 374.)

The stipulation authorizing the mortgagor to take possession [3] at the maturity of the first note or installment does not impose an obligation upon him to do so, but creates an option which he may exercise or not, as he chooses. The fact that he does not choose to exercise it does not in anywise impair his lien. (*Barbour* v. *White* and *Chapin* v. *Whitsett, supra.*) The life of the lien cannot, of course, continue beyond sixty days after the maturity of the debt, though the date of maturity falls within a year, unless it be extended as the statute prescribes, or, where the statute does not provide for renewal, the mortgagee exercises diligence in taking possession. (*Travis* v. *McCormick*, 1 Mont. 148.) One year, with the addition of sixty days, is the extreme limit, except as provided in section 5763, *supra.*

Having reached the conclusion that the decision of the district judge was correct for the reason stated by him, it is not necessary to consider further whether it should be sustained on the additional ground urged by counsel for defendant bank, [4] *viz.*, that the plaintiff, being a subsequent encumbrancer,

with knowledge of the prior mortgage, during its life, cannot insist that it acquired a superior right by the failure of the defendant bank to renew it.   Counsel's position in this behalf is sustained by the great weight of authority, apparently, indeed, by the decisions of the courts of all the states so far as they have been called to our attention, with the single exception of the state of Arkansas.   (See *First State Bank of Ardmore* v. *King & McCants,* 37 Okl. 744, 133 Pac. 30, 47 L. R. A. (n. s.) 668, and notes, wherein the cases are collected and discussed.)   We forego decision of the point for the reason, also, that the terms of the statute considered in the principal case (Comp. Laws, Okl. 1909, sec. 4422), vary somewhat from those employed by our legislature in section 5762, *supra.*

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

