## CHESTER STATE BANK, Respondent, *v.* MINNEAPOLIS THRESHING MACHINE CO., Appellant.

### (No. 4,125.)

(Submitted April 13, 1920.   Decided May 19, 1920.)

[190 Pac. 136.]

*Claim and Delivery — Chattel Mortgages — Filing Renewals — Change in County Boundaries—Effect on Rights of Parties.*

Chattel Mortgages—Filing—Notice to Subsequent Mortgagees.

1.   Where a chattel mortgage was a valid and subsisting lien and filed in the county where the mortgagor resided, as required by the statute in force at the time, it imparted notice to a subsequent mortgagee (a bank), which acquired its right subject to the superior right of the prior mortgagee, the rights of the parties being fixed as of the date of the second mortgage, unaffected by the failure of the first mortgagee to file an extension affidavit.

Same—Valid Between Parties Until Paid.

2.   A chattel mortgage is valid until the debt is paid, not only between the parties to it, but also as against others except creditors of the mortgagor and subsequent purchasers and encumbrancers in good faith.

Same—Subsequent Encumbrancer in Good Faith—Definition.

3.   To constitute one a subsequent encumbrancer in good faith, he must have taken his mortgage without knowledge, actual or constructive, of the existence of a prior one.

Same—Filing—Change in Statute—Effect.

4.   Where the statute in force at the time a chattel mortgage was executed required that it be filed in the county where the mortgagor resided, a subsequent change in the law requiring its filing in the county where the property was situated could not affect the validity of the mortgage.

Same—Recordation—Effect of Change in County Boundaries.

5.   The validity of the recordation of an instrument affecting title to real or personal property is not affected by subsequent changes in the boundaries of the recording district, whereby the property is made to fall within a different district.

Same—Creation of New County—Renewal Filed in Old County—Effect on Rights of Mortgagee.

6.   A chattel mortgage was filed by defendant in C. county, where the mortgagor resided and the property was situated, as required by section 5761, Revised Codes, before amendment, the mortgage being kept alive by renewal affidavits filed in that county.   A second mortgage was taken on the same property by a bank about a year thereafter.   Subsequently H. county was created, including among others, the portion of C. county, where the mortgagor resided.   The bank, after the creation of the new county, filed its renewal affidavits in that county.   Upon default in payment of the first mortgage, defendant bought it in on judicial sale.   *Held,* under the rule above (paragraph

5), in an action in claim and delivery by the bank, that the priority of the first mortgage was not affected by the change in county boundaries by which the place of residence became part of the new county, or the failure of defendant to file its renewal affidavits in that county.

*Appeal from District Court, Hill County; John W. Tattan, Judge.*

ACTION by the Chester State Bank against the Great Northern Railway Company, the Minneapolis Threshing Machine Company, and others. From a judgment for plaintiff, defendant Minneapolis Threshing Machine Company, appeals. Reversed and remanded, with directions.

*Messrs. H. S. Kline, C. B. Elwell* and *J. A. Hosp,* for Appellant, submitted a brief; *Mr. Elwell* argued the cause orally.

The legislature could not, by its act in dividing Chouteau county and creating Hill county, affect the rights of any party which it had acquired prior to the division of the county. (See note and citations in 18 Am. & Eng. Ann. Cas. 158; 11 C. J. 529; *Parish Board of School Directors* v. *Edrington,* 40 La. Ann. 633, 4 South. 574; *Keys & Co.* v. *First Nat. Bank of Claremore,* 22 Okl. 174, 18 Ann. Cas. 152, 104 Pac. 346; *First Nat. Bank of Claremore* v. *Keys,* 229 U. S. 179, 57 L. Ed. 1140, 33 Sup. Ct. Rep. 642 [see, also, Rose's U. S. Notes].)

Under section 5762, Revised Codes, a junior mortgagee must take subsequent to the failure to renew in order to give him any rights as against the senior mortgagee. If he takes within the time allowed for renewal, his rights become fixed and cannot be altered by the failure to renew. As to the meaning of the words "good faith," they have been universally held to mean one taking without notice. (*Slimmer* v. *Meade County Bank,* 34 S. D. 147, 147 N. W. 734; *Laubenheimer* v. *McDermott,* 5 Mont. 512, 6 Pac. 344; *Ullman* v. *Duncan,* 78 Wis. 213, 9 L. R. A. 683, 47 N. W. 266; *Howard* v. *First National Bank of Hutchinson,* 44 Kan. 549, 10 L. R. A. 537, 24 Pac. 983; *Meech* v. *Patchin,* 14 N. Y. 71; *Manning* v. *Monaghan,* 23 N. Y.

539; *Lewis* v. *Palmer,* 28 N. Y. 271, 274; *Catlett* v. *Stokes,* 33 S. D. 278, 145 N. W. 554.)

The burden of proving that it is an encumbrancer in good faith, that is, without notice, rests upon the respondent, and that it has failed to do, and consequently its case must fail. (*Big Stone County Bank* v. *Crown Elevator Co.,* 111 Minn. 399, 127 N. W. 181; *Kimball* v. *Houston Oil Co.* (Tex. Civ.), 94 S. W. 423; *Nickerson* v. *Wells-Stone Mercantile Co.,* 71 Minn. 230, 73 N. W. 959, 74 N. W. 891.)

No appearance on behalf of Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In March, 1910, the Minneapolis Threshing Machine Company (hereinafter referred to as the machine company) sold to William Mitchell a steam engine and other personal property, taking from the purchaser his promissory notes, one due October 1, 1910, one October 1, 1911, and one October 1, 1912; each bearing interest at eight per cent per annum. To secure the payments of these notes, Mitchell executed to the machine company a chattel mortgage upon the property purchased. The mortgage was duly executed, and was filed in the office of the county clerk of Chouteau county, the county in which the property was situated and in which the mortgagor resided. In November of each year, 1910, 1911, 1912 and 1913, the machine company filed an affidavit renewing the chattel mortgage, and each of these affidavits was filed in the office of the county clerk of Chouteau county. In December, 1913, the mortgagor having defaulted in the payment of the indebtedness, the machine company caused the property to be sold by the sheriff as provided by law and itself became the purchaser. It took possession of the property and delivered it to the Great Northern Railway Company for shipment. Thereupon the Chester State Bank demanded possession of the property, and, upon refusal, brought this action in claim and delivery against the railway

company, the machine company, the local agent of the machine company, and the mortgagor, claiming the right to possession by virtue of two chattel mortgages executed to it by Mitchell upon this same property. The first mortgage, dated July 11, 1911, was filed in the office of the county clerk of Chouteau county and thereafter renewed by an affidavit filed in that county in January, 1912. In February, 1912, Hill county was created out of a portion of Chouteau county, which included the portion where the mortgaged property was situated and where the mortgagor resided. In August, 1912, and again in August, 1913, the bank filed its affidavit of renewal in Hill county. The bank's second mortgage was dated November 17, 1913, and was filed in the office of the county clerk of Hill county.

Upon an agreed statement embracing the foregoing. facts, the case was tried by the court, as between the bank, on the one hand, and the railway company and the machine company, on the other, resulting in a judgment for the plaintiff, from which judgment the machine company prosecuted this appeal. The questions presented involve the priority of the machine company's mortgage over each of the bank's mortgages.

No contention is made that the machine company's mortgage was not secured in good faith, so that the only question presented is whether that company lost its priority by failing to file affidavits of renewal in Hill county after that county was created in February, 1912. At the time the bank's first [1] mortgage was taken, in July, 1911, the machine company's mortgage was a valid, subsisting lien upon the property in controversy on file in the county where the mortgagor resided, as required by the statute then in force. (Sec. 5761, Rev. Codes.) As such it imparted notice to the bank (*Isbell v. Slette,* 52 Mont. 156, 155 Pac. 503), which acquired its right subject to the superior right of the machine company. The rights of the parties became fixed as of the date of the bank's mortgage, and could not be affected thereafter by the failure of the machine company to file an extension affidavit, if it had

done so. (*First Nat. Bank* v. *Marshall,* 51 Mont. 224, 152 Pac. 36; *Slimmer* v. *Meade County Bank,* 34 S. D. 147, 147 N. W. 734; *Ullman* v. *Duncan,* 78 Wis. 213, 9 L. R. A. 683, 47 N. W. 266; Jones on Chattel Mortgages, sec. 293; 11 Corpus Juris, [2] 545; note, 47 L. R. A. (n. s.) 668.) As between the mortgagor and the machine company, the mortgage was valid until the debt secured by it was paid. (*Laubenheimer* v. *McDermott,* 5 Mont. 512, 6 Pac. 344.) It was equally valid during such period as against everyone except creditors of the mortgagor and subsequent purchasers and encumbrancers in good faith. (Sec. 5762, Rev. Codes; sec. 5, Chap. 86, Laws 1913.) To constitute the bank a subsequent encumbrancer in good faith, it [3] must have taken its mortgage without knowledge, actual or constructive, of the existence of the machine company's prior mortgage. (*First State Bank* v. *King & McCants,* 37 Okl. 744, 47 L. R. A. (n. s.) 668, 133 Pac. 30.) The machine company's mortgage, on file in the proper county and kept alive by the renewal affidavits, imparted notice to the bank (*Isbell* v. *Slette,* above), and therefore the bank was not a subsequent encumbrancer in good faith within the meaning of the statute now under review (*Howard* v. *First Nat. Bank,* 44 Kan. 549, 10 L. R. A. 537, 24 Pac. 983), and could not be heard to complain if the machine company's mortgage had never been renewed.

As observed before, when the machine company's mortgage [4] was secured, the statute required that a chattel mortgage be filed in the county where the mortgagor resided. By Chapter 86, Laws of 1913, section 5761 was repealed, and in lieu thereof was substituted a provision which required a chattel mortgage to be filed in the county where the property was situated. This statute could not affect the validity of the machine company's mortgage, but it did operate to require the bank to file its second mortgage in Hill county.

The question then arises: Did the machine company maintain [5, 6] the priority of its mortgage on file in Chouteau county upon property which came to be within Hill county, and the mortgagor of which property became a resident of Hill county,

upon the creation of that county, by filing the renewal affidavits in Chouteau county? At the time the machine company's mortgage was executed, it was filed properly in Chouteau county, and could not have been filed elsewhere. The statute then in force required, and the subsequent statute has required, that the affidavit of renewal be "filed in the office where the mortgage therein described is filed," that the clerk attach such affidavit to the mortgage, and that "the original mortgage shall then continue" in force for the period designated. (Sec. 5763, Rev. Codes; sec. 6, Chap. 86, above.) The Act under which Hill county was created (Chap. 112, Laws 1911) provided: "The board of county commissioners of any new county formed as aforesaid must provide suitable books and have transcribed from the records of the old county or counties all such parts thereof as relate to or affect property or the title thereof situate in the new county, and said records when so transcribed and certified as herein provided shall have the same force and effect as such original records." Nowhere was provision made for refiling chattel mortgages in the new county, and neither was it necessary to the validity of a chattel mortgage that it designate the particular place in a county where the mortgagor resided or where the property was situated. Manifestly, Chapter 112, above, contemplated that only such records of the old county should be transcribed as disclosed on the face of them that they affected property within the confines of the new county. Whether there ever was a transcribed copy of the machine company's mortgage filed in Hill county does not appear from this record, and in our view of the case it is altogether immaterial.

Doubtless the legislature could have required that the original mortgage be transferred from Chouteau county and refiled in Hill county, or it could have required that a certified copy be filed in Hill county, and that thereafter the renewal affidavit should be filed in the new county and attached to such copy; but it did neither of these things. It required the renewal affidavit to be filed with and attached to the original mortgage.

58 Mont.—4

But further discussion of the subject is not necessary. The rule is recognized everywhere that the validity of the recordation of an instrument affecting the title to real or personal property is not affected by subsequent changes in the boundaries of the recording district, whereby the property is made to fall within a different district. (*Keys & Co.* v. *First Nat. Bank,* 22 Okl. 174, 104 Pac. 346, and note to same in 18 Ann. Cas. 158.)

Upon the agreed statement of facts, the mortgage of the machine company was prior and superior to each of the bank's mortgages, and by purchasing the property at the foreclosure sale under its mortgage the machine company became entitled to the possession of the property.

The judgment is reversed and the cause is remanded, with directions to enter judgment in favor of the answering defendants.

<em>Reversed and remanded.</em>

ASSOCIATE JUSTICES HURLY, MATTHEWS and COOPER concur.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.